This appeal questions Tit. 36, § 74 (62a) Code of Ala. 1940, Recompiled 1958, as to whether the umbrella policy in this case came within its provisions. The trial court found that it did. We find that it did not, and reverse and render.
On August 4, 1974, Gwen Metzger was killed when the automobile she was driving was struck by an uninsured motorist who was intoxicated and fleeing the police. At the time her husband, Leonard Metzger, had in effect two insurance policies relevant to this case. The first was an "Automobile Policy" issued by Aetna Casualty and Surety Co. on the automobile Gwen Metzger was driving when the accident occurred. This policy had limits of $300,000 and specifically included uninsured motorist coverage. The second, issued by Trinity Universal Insurance Co. with a limit of $1,000,000, was termed a "Personal Excess Umbrella Policy." This umbrella policy covered "ultimate net loss in excess of the underlying limit which the insured shall become legally obligated to pay as damages because of personal injury or property damage." The "underlying limit" was determined by the limits on two "underlying policies," specifically, the automobile policy issued by Aetna and a homeowner's policy issued by Reliance Insurance Co. with limits of $100,000. Metzger collected $10,000 under the uninsured motorist provisions of his automobile policy with Aetna and then made demand on Trinity Universal to pay uninsured motorist coverage under their umbrella policy. Trinity Universal denied liability prompting Metzger to bring this suit. The case was tried by a judge without a jury on the single question of coverage. The trial court rendered judgment for Metzger and Trinity Universal appealed.
Our uninsured motorist statute reads in pertinent part:
 "No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state . . . unless coverage is provided therein or supplemental thereto, . . . under provisions approved by the commissioner of insurance, for the protection of persons insured thereunder . . . from owners or operators of uninsured vehicles . . . provided, that the named insured shall have the right to reject such coverage; . . ." Tit. 36, § 74 (62a), Code of Ala. 1940, Recompiled 1958.
We must determine whether the umbrella policy issued by Trinity Universal is an "automobile liability or motor vehicle liability policy" as contemplated by this statute. First it is clear that it is not a "motor vehicle liability policy" because this term is defined in Tit. 36, § 74 (62) as a policy insuring specific automobiles and individuals subject to limits of $5,000/$10,000/$1,000. (Tit. 36, § 74 (62)(b)(1) and (2). Other statutory requirements are set out in subsections (a) and (c)-(k).) Trinity Universal's umbrella policy refers to an underlying policy with Aetna rather than any specific automobile, and sets limits far above the statutory requirements.
Is this umbrella policy, nevertheless, an "automobile liability policy" and therefore subject to the statute? This court has in the past drawn a distinction between "automobile liability policies" and "motor vehicle liability policies," (see State Farm Mutual Automobile Insurance Co. v. Hubbard,272 Ala. 181, 187, 129 So.2d 669, 675 (1961)) but we think that, for the purposes of this case, any fine distinctions that may exist between these two terms are not relevant. *Page 962 
The term "automobile liability policy" as used in our uninsured motorist statute, Tit. 36, § 74 (62a), contemplates a policy similar in nature to that defined in Tit. 36, § 74 (62). Automobile liability policies and motor vehicle liability policies insure against the risk of loss through the operation of specific automobiles. An umbrella policy, on the other hand, is fundamentally excess insurance designed to protect against catastrophic loss. Before an umbrella policy is issued, a primary policy (the "underlying policy") must be in existence and this primary policy must by law provide uninsured motorist coverage. The umbrella policy assumes a risk of much less frequent occurrence, i.e., the risk of judgments in excess of primary policy limits, and accordingly carries premiums which reflect the lesser magnitude of this risk. The umbrella policy issued by Trinity Universal is an inherently different type of insurance from an automobile or motor vehicle liability policy, and consequently does not come within the scope of the uninsured motorist statute.
Of course, Alabama allows "stacking" of uninsured motorist coverage and our holding today in no way affects this principle as outlined in Safeco Insurance Co. of America v. Jones,286 Ala. 606, 243 So.2d 736 (1970). It is important, however, to note the factual differences between that case and the one at bar. In Safeco the insurer had accepted premiums for uninsured motorist coverage but attempted to escape liability through the fortuitous presence of other applicable insurance. Trinity Universal, on the other hand, issued its umbrella policy on the premise that another primary policy with uninsured motorist coverage was applicable. It did not collect premiums for uninsured motorist coverage as Safeco did and then attempt to avoid liability through an obscure "excess-escape" clause. When Metzger purchased the policy it was clear that it was merely excess insurance designed solely to protect him from the infrequent occurrence of catastrophic judgments against him. Trinity Universal's umbrella policy is clearly a very different sort of insurance from that contemplated by the uninsured motorist statute. Thus the umbrella policy is not subject to that statute and is not required to provide uninsured motorist coverage.
To reiterate, we simply hold today that an "umbrella policy," clearly intended as excess insurance to protect against catastrophic judgments and issued as supplementary insurance to existing primary policies themselves sufficient to meet the requirements of the law, is neither an automobile liability nor motor vehicle liability policy within the scope of the uninsured motorist statute, even though one of the primary policies may itself insure automobiles.
REVERSED AND JUDGMENT RENDERED FOR THE DEFENDANT.
TORBERT, C.J., and BLOODWORTH, ALMON and EMBRY, JJ., concur.