No. 90-081

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

KAREN ROWE, individually, and
as Guardian of JOSHUA ROWE and
KARRY ROWE; and WILLIAM BOURRET,
the Personal Representative of the
Estate of BARRY R. ROWE, Deceased,

        Plaintiffs and Appellants,

   -vs-

THE TRAVELERS INDEMNITY COMPANY,
a Connecticut Corporation and
JOHN DOE AND RICHARD ROE, INC.,
a Montana Corporation,

        Defendants and Respondents.


APPEAL FROM:   District Court of the Eighth Judicial District,
                In and for the County of Cascade,
                The Honorable Leif B. Erickson, Judge presiding.


COUNSEL OF RECORD:

       For Appellants:

           Joseph R. Marra and David A. Hopkins; Marra, Wenz,
           Johnson & Hopkins, P.C., Great Falls, Montana

       For Respondents:

           William Conklin and Allen P. Lanning; Conklin,
           Nybo, LeVeque & Murphy, P.C., Great Falls, Montana

           Judith Bartram; Jardine, Stephenson, Blewett &
           Weaver, Great Falls, Montana (for John Doe and
           Richard Roe, Inc.)

                    Submitted on Briefs:  September 20, 1990

                        Decided:  October 24, 1990

Filed:

—————————————————————
Clerk

FILED
'90 OCT 24 AM 10 47
ED SMITH, CLERK
MONTANA SUPREME COURT

Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from the Eighth Judicial District, Cascade County. Plaintiffs, the personal representative of the deceased, Barry R. Rowe, his widow, Karen Rowe, and their two children, sought a declaratory ruling that they were entitled to recover uninsured motorist benefits under two umbrella policies issued by Travelers Indemnity Company. The parties filed cross-motions for summary judgment. The District Court denied the plaintiffs' summary judgment motion and granted summary judgment to Travelers. From this decision, plaintiffs appeal. We affirm.

The sole issue is whether the District Court erred in ruling that an umbrella policy does not constitute an automobile or motor vehicle policy which must include uninsured motorist coverage.

I.

On December 9, 1985, Barry R. Rowe was fatally injured in an automobile collision with an alleged uninsured motorist. Rowe was insured by a primary general liability insurance policy and two umbrella policies, all issued by Travelers. The policies insured Rowe's business, Page-Werner, and Rowe and his two partners individually. The primary policy contained single liability limits of $500,000 and provided $50,000 in uninsured motorist coverage.

The other two policies, a Catastrophic Umbrella Policy (CUP), and a Personal Liability Umbrella of Security Policy (PLUS), had total liability limits of $3,000,000 and did not provide uninsured

2

motorist coverage. The CUP policy excluded coverage for obligations imposed by the uninsured motorist law. The PLUS policy did not specifically exclude such coverage. However, Travelers refused to extend uninsured motorist coverage beyond the $50,000 it had an obligation to pay under the primary automobile liability policy.

Plaintiffs brought this action, claiming that Montana's uninsured motorist statute, § 33-23-201, MCA, required Travelers to supply uninsured motorist coverage under each of the umbrella policies.


## II.

While this is a case of first impression in Montana, several other jurisdictions have addressed the issue of whether their uninsured motorist statutes mandate issuance of uninsured motorist coverage in umbrella policies. These cases have been resolved on either of two grounds: (1) the type of uninsured motorist statute; or (2) the type of insurance. See, e.g., Bartee v. R.T.C. Transportation, Inc. (Kan. 1989), 781 P.2d 1084; Cohn v. Pacific Employers Insurance Co. (Conn. 1990), 569 A.2d 544.

The courts basing their decisions on the type of uninsured motorist statute have discerned two differing policy considerations and legislative intent underlying such statutes, depending on the jurisdiction. "Minimum liability" statutes require that motorists maintain a minimum level of liability insurance and, therefore, a minimum level of uninsured coverage. The policy in such states is

3

to ensure that injured motorists can recover the same amount as would have been available from an insured motorist who maintained the minimum statutory limit of bodily injury liability coverage. Continental Insurance Co. v. Howe (Fla. App. 3 Dist. 1986), 488 So.2d 917, 919.

"Full recovery" statutes, on the other hand, require insurers to issue uninsured motorist coverage equal to the amount of bodily injury liability insurance that the policy provides. For example, if the insurance policy has limits of $50,000/$100,000 for bodily injury liability, the insurer must also provide $50,000/$100,000 in uninsured motorist coverage. The policy underlying these statutes is to "allow full recovery under the terms of any applicable policies when a person is injured by an uninsured motorist." Continental, 488 So.2d at 919-20.

Most jurisdictions which have "full recovery" uninsured motorist statutes have concluded that since an umbrella policy includes liability coverage for motor vehicle accidents, an umbrella policy must offer an equivalent amount of uninsured motorist benefits to the insured in order to permit full recovery. See Chicago Insurance Co. v. Dominguez (Fla. App. 1982), 420 So.2d 882; Bartee v. R.T.C. Transportation, Inc. (Kan. 1989), 781 P.2d 1084; Southern American Insurance Co. v. Dobson (La. 1983), 441 So.2d 1185; Cincinnati Insurance Co. v. Siemens (Ohio App. 1984), 474 N.E.2d 655. But see United Services Automobile Ass'n v. Wilkinson (N.H. 1989), 569 A.2d 749 (holding that uninsured

4

motorist statute does not apply to umbrella policies, even though statute was "full recovery" type).

Montana's uninsured motorist statute provides "minimum liability" insurance:

> (1) No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state . . . unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in 61-6-103 . . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom.

Section 33-23-201(1), MCA (1985). The minimum amounts of uninsured coverage which must be provided pursuant to § 61-6-103, MCA, are $25,000 for one person and $50,000 for two persons. Montana has no requirement that uninsured coverage must equal the policy's coverage for bodily injury liability unless the limits are not specified in the policy. See § 33-23-203, MCA.

In this case, however, both parties agree that the distinction between "minimum liability" and "full recovery" statutes is meaningless. Rather, their argument involves whether an umbrella policy is within the realm of insurance contemplated by the uninsured motorist statute.

Plaintiffs argue that the words "[n]o automobile liability or motor vehicle liability policy" in the uninsured motorist statute

do not exclude umbrella insurance policies; therefore, umbrella policies must include uninsured motorist coverage because they also provide "motor vehicle liability" insurance.

Travelers contends that umbrella policies are fundamentally different from automobile liability policies since umbrella policies are intended solely to provide excess liability protection for claims against the insured by third parties. Because of this difference, an umbrella policy is not a "motor vehicle liability policy," designed to be controlled by the uninsured motor vehicle statute.

Courts have discussed the unique nature of umbrella policies, which are a continuation of an underlying primary policy. Thompson v. Grange Insurance Ass'n. (Wash. App. 1983), 660 P.2d 307, 311. Umbrella policies "provide at a modest cost broad coverage for catastrophic losses, and excess coverage over and above any type of primary coverage. . . ." United Services Automobile Ass'n, 569 A.2d at 753. While the excess coverage of an umbrella or catastrophe policy protects an insured and his business against liability from third parties, the uninsured motorist protection of the underlying primary policy does not involve liability claims against the insured from third parties. Matarasso v. Continental Casualty Co. (App. Div. 1981), 440 N.Y.S.2d 40, 41.

However, we need go no further than our own statutes to determine whether an excess or umbrella policy is a "motor vehicle liability policy" as contemplated by the uninsured motorist

6

statute. A "motor vehicle liability policy"[1] is defined as:

> an owner's or operator's policy of liability insurance, certified as provided in 61-6-133 or 61-6-134 as proof of financial responsibility and issued, except as otherwise provided in 61-6-134, by an insurance carrier duly authorized to transact business in this state, to or for the benefit of the person named therein as insured.

Section 61-6-103(1), MCA (1985). The "motor vehicle liability policy" must "designate by explicit description or by appropriate reference all motor vehicles with respect to which coverage is thereby to be granted." Section 61-6-103(2)(a), MCA (1985). With respect to excess coverage, the statute provides:

> (8) Any policy which grants the coverage required for a motor vehicle liability policy may also grant any lawful coverage in excess of or in addition to the coverage specified for a motor vehicle liability policy and such excess or additional coverage <u>shall not be subject to the provisions of this part</u>. With respect to a policy which grants such excess or additional coverage <u>the term "motor vehicle liability policy" shall apply only to that part of the coverage which is required by this section</u>.

Section 61-6-103(8), MCA (1985) (emphasis added). The statutory definition of "motor vehicle liability policy" does not include excess insurance, such as an umbrella policy. Thus, an umbrella policy could not constitute a "motor vehicle liability policy" as envisioned by the uninsured motorist statute.

---

[1] Section 33-23-204(2), MCA, enacted in 1987, specifically refers to Title 61, Chapter 6 of the Code in defining "motor vehicle liability policy."

A majority of courts which have addressed this issue have concluded that umbrella policies are not "motor vehicle liability policies" as defined by their uninsured motorist statutory schemes, similar to Montana's. See O'Hanlon v. Hartford Accident and Indemnity Co. (3d Cir. 1981), 639 F.2d 1019 (interpreting Delaware law); Trinity Universal Ins. Co. v. Metzger (Ala. 1978), 360 So.2d 960; Furlough v. Transamerica Insurance Co. (Cal. App. 2 Dist. 1988), 249 Cal.Rptr. 703; Cohn v. Pacific Employers Ins. Co. (Conn. 1990), 569 A.2d 544; Continental Insurance Co. v. Howe (Fla. App. 3 Dist. 1986), 488 So.2d 917, reh'g denied 494 So.2d 1151 (interpreting Rhode Island law); Cincinnati Insurance Co. v. Miller (Ill. App. 1 Dist. 1989), 546 N.E.2d 700, reh'g denied 550 N.E.2d 554; United Services Automobile Ass'n v. Wilkinson (N.H. 1989), 569 A.2d 749; Matarasso v. Continental Casualty Co. (App. Div. 1981), 440 N.Y.S.2d 40; Moser v. Liberty Mutual Insurance Co. (Okla. 1986), 731 P.2d 406; MacKenzie v. Empire Insurance Co. (Wash. 1989), 782 P.2d 1063.

As we have stated previously, the purpose of the uninsured motorist statute, for those who elect such coverage, is to recompense innocent persons injured through the negligence of motorists who, because they are uninsured and not financially responsible, cannot be made to respond in damages. See Guiberson v. Hartford Casualty Insurance, Inc. (1985), 217 Mont. 279, 289, 704 P.2d 68, 74; see also Horace Mann Insurance v. Hampton (1989), 235 Mont. 354, 357, 767 P.2d 343, 344 (stating purpose of Mandatory

Liability Protection Act).

However, reading §§ 33-23-201 and 61-6-103, MCA, together, the statutes clearly apply only to primary automobile insurance, not to a commercial umbrella policy issued to protect the insured from liability to third parties. If the legislature desires uninsured motorist coverage to equal liability coverage from any source, it may amend the statute accordingly.

When no genuine issue exists as to any material fact, the moving party is entitled to summary judgment as a matter of law. Rule 56(c), M.R.Civ.P.; Blaskovich v. Noreast Development Corp. (Mont. 1990), 790 P.2d 977, 978, 47 St.Rep. 740, 742. The party asserting summary judgment has the burden of demonstrating that no genuine issue of material fact exists. Once this is established, the burden shifts to the other party to show otherwise. Rule 56(e), M.R.Civ.P. We hold that Montana's uninsured motorist statute does not require an insurer to provide uninsured motorist coverage in an excess or umbrella policy. Since a genuine issue of material fact has not been demonstrated, the District Court did not err in denying summary judgment to plaintiffs and granting defendant's motion for summary judgment.

Our ruling does not mean that an insurer may not offer additional uninsured motorist coverage as part of a primary policy or umbrella policy.

Affirmed.

John Conway Harrison
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

10