905 P.2d 1128

Cecilia ARCHUNDE, Plaintiff–Appellant,

v.

INTERNATIONAL SURPLUS LINES IN-SURANCE COMPANY, Albuquerque Public Schools, and General Accident Insurance Company of America, Defendants–Appellees.

No. 16440.

Court of Appeals of New Mexico.

Sept. 5, 1995.

Certiorari Denied Oct. 12, 1995.

Roger V. Eaton, Gabrielle M. Valdez, Eaton, Martinez & Hart, P.C., Albuquerque, for Plaintiff–Appellant.

Jonathan B. Sutin, Sutin, Thayer & Browne, P.C., Albuquerque, for Defendant–Appellee International Surplus Lines Ins. Co.

Emily A. Franke, Martin Diamond, Butt, Thornton & Baehr, P.C., Albuquerque, for Defendant–Appellee General Accident Ins. Co. of America.

George R. McFall, William R. Keleher, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, for Defendant–Appellee Albuquerque Public Schools.

## OPINION

DONNELLY, Judge.

1. Appellant, Cecilia Archunde, appeals from separate orders granting summary judgment in favor of Defendants, International Surplus Lines Insurance Company (ISLIC), General Accident Insurance Company of America (General), and the Albuquerque Public Schools (APS). Appellant raises several issues on appeal which we combine and address as follows: (1) whether the motor vehicle excess liability policy issued by ISLIC to APS provided uninsured (UM) or underinsured (UIM) motorist coverage on behalf of Appellant; (2) whether the motor vehicle insurance policy issued by General to Saavedra School Bus Co., Inc. (Saavedra) provided UM/UIM coverage on behalf of Appellant; and (3) whether APS, a self-insurer, was obligated to provide UM/UIM coverage and liability insurance coverage for Saavedra and, if so, whether such coverage extended to Appellant as an insured. We affirm.

*FACTS*

2. Appellant was employed as a bus driver for Saavedra which provided bus service for students of APS. On May 23, 1988, while Appellant was operating one of Saavedra's school buses, her vehicle was struck by an automobile driven by a third party. The third-party driver was underinsured. At the time of the accident, APS acted as a self-insurer and, in addition, carried an excess liability policy for self-insurers[1] with ISLIC which contained a rider expressly excluding UM coverage.

3. Saavedra did not carry any liability insurance, UM, or UIM coverage for the operators of its school buses. It did carry a policy issued by General, listing Saavedra as the named insured, and providing insurance coverage for physical damage and bodily injury to third parties injured by an automobile owned or operated by Saavedra or its employees. Appellant received workers' compensation benefits from Saavedra. Appellant also made demand on ISLIC, General, and APS for the payment of UM/UIM insurance benefits, and claimed that, under APS's contract with Saavedra, APS was obligated to provide UM/UIM coverage for the benefit of drivers of the school buses owned or operated by Saavedra. Appellant also claimed that she was a third-party beneficiary under the APS contract. Defendants denied the existence of UM or UIM coverage extending to

---

1. An excess liability insurance policy is a policy "designed to protect against catastrophic loss and intended to 'kick-in' only at large dollar-amounts of liability." Lisa K. Gregory, Annotation, *"Excess" or "Umbrella" Insurance Policy as Providing Coverage for Accidents With Uninsured or Underinsured Motorists*, 2 A.L.R.5th 922, 932 n. 1 (1992).

Appellant or that Appellant was an insured under either ISLIC's or General's policies of insurance.

4. Following the denial of her demands for the payment of UM or UIM benefits by each of the Defendants, Appellant filed a complaint for declaratory judgment seeking to have the district court determine her claims that she was entitled to UM/UIM coverage under ISLIC's and General's insurance policies; that APS, as a self-insurer, was obligated to provide UM/UIM coverage in favor of Appellant; and that Defendants were liable to Appellant under the unfair trade practices provisions of the Insurance Code, NMSA 1978, Sections 59A–16–1 to –30 (Repl.Pamp.1995).

*ISLIC'S POLICY*

■ 5. Appellant argues that the district court erred in determining that the insurance policy issued by ISLIC did not provide UM or UIM coverage for Appellant. According to Appellant, as a matter of public policy and pursuant to NMSA 1978, Section 66–5–301(A) (Repl.Pamp.1994), all automobile insurance policies delivered in this state are required to include UM or UIM coverage.

6. Responding to this argument, ISLIC asserts that the policy issued by it to APS provided *excess* liability insurance coverage for liability claims by third parties in *excess* of $250,000, and that this type of insurance is outside the scope of Section 66–5–301(A).[2] This issue is one of first impression in New Mexico.

7. We begin our analysis by examining the language of Section 66–5–301(A) which provides in applicable part:

A. No motor vehicle or automobile liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person and for injury to or destruction of property of others arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in New Mexico with respect to any motor vehicle registered or principally garaged in New Mexico unless coverage is provided therein or supplemental thereto *in minimum limits for bodily injury or death and for injury to or destruction of property as set forth in Section 66–5–215 NMSA 1978 and such higher limits as may be desired by the insured, but up to the limits of liability specified in bodily injury and property damage liability provisions of the insured's policy,* for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles.... [Emphasis added.]

Our examination of Section 66–5–301(A) fails to indicate a legislative intent to extend the reach of the statute beyond a motorist's primary automobile insurance policy. Therefore, in an excess policy, there is no statutory requirement mandating the inclusion of such coverage.

8. Courts in other jurisdictions are not in accord concerning whether insurance companies that issue excess liability insurance policies are obligated to provide UM/UIM coverage in such policies, or, if so, at what point such coverage begins. However, a majority of jurisdictions that have considered this issue have held that issuers of excess liability insurance policies are not required to provide UM/UIM coverage under statutory provisions analogous to Section 66–5–301(A). *See, e.g., Trinity Universal Ins. Co. v. Metzger,* 360 So.2d 960, 962 (Ala.1978); *Hartbarger v. Country Mut. Ins. Co.,* 107 Ill.App.3d 391, 63 Ill.Dec. 42, 45, 437 N.E.2d 691, 694 (1982); *Rowe v. Travelers Indem. Co.,* 245 Mont. 413, 800 P.2d 157, 161 (1990); *MacKenzie v. Empire Ins. Cos.,* 113 Wash.2d 754, 782 P.2d 1063, 1065–66 (1989) (en banc); *see also Moser v. Liberty Mut. Ins. Co.,* 731 P.2d 406, 410 (Okla.1986). *But see Aetna Casualty & Sur. Co. v. Green,* 327 So.2d 65, 66 (Fla.Dist.Ct. App.), *cert. denied,* 336 So.2d 1179 (1976); *St. Paul Fire & Marine Ins. Co. v. Goza,* 137 Ga.App. 581, 224 S.E.2d 429, 431 (1976); *Bartee v. R.T.C. Transp., Inc.,* 245 Kan. 499, 781 P.2d 1084, 1091–96 (1989). *See generally*

---

2. Appellant contends that there is a disputed question of fact regarding whether the policy issued by ISLIC to APS is an excess liability policy. Our examination of a copy of the policy contained in the record clearly and unambiguously indicates that it did in fact provide excess insurance coverage.

Gregory, *supra*, 2 A.L.R.5th 922. Moreover, a leading authority on insurance law has taken the position that "it is clear that an excess policy, carried by a self-insurer to protect its own interests, is not a policy required to contain UM provisions." 8C John A. Appleman & Jean Appleman, *Insurance Law and Practice*, § 5071.85, at 112 (1981)

9. Our interpretation of Section 66–5–301(A) is consonant with the language of the statute and the approach followed by a majority of courts in other jurisdictions that have addressed this issue. Thus, we conclude that the district court properly granted ISLIC's motion for summary judgment.[3]

*GENERAL'S POLICY*

■ 10. Appellant also argues that the district court erred in determining that the insurance policy issued by General to Saavedra did not afford any UM/UIM coverage on her behalf. Our review of the vehicle insurance policy issued by General to Saavedra indicates that it was a liability policy affording coverage on the school buses listed therein for damage from collisions and other specified causes. *See* § 66–5–301(A) (liability policy may insure against loss resulting from bodily injury or destruction of property); *Spooner v. Paul Revere Life Ins. Co.*, 578 F.Supp. 369, 371 (E.D.Mich.1984) (liability insurance provides coverage against loss or liability on account of bodily injuries or, in a broader sense, injuries to property). Although the policy contained an express provision providing UM/UIM coverage for one automobile listed in the policy, it did not contain any provision expressly providing for UM or UIM coverage on behalf of the owner or operators of any of the buses.

11. Appellant reasons, however, that because New Mexico law mandates that all automobile liability policies contain UM/UIM coverage, the policy is required to include UM/UIM coverage for the owner or operators of Saavedra's buses. Our reading of the policy, together with the provisions of Section 66–5–301, however, leads us to a different conclusion. *See Townsend v. State ex rel. State Highway Dep't*, 117 N.M. 302, 304, 871 P.2d 958, 960 (1994) (contracts incorporate the relevant law in force at the time of creation).

12. General points out that the district court's award of summary judgment on its behalf is supported, among other reasons, on the ground that Appellant is not an "insured" under the policy. We agree. Under New Mexico law, "insurance" is defined as "a contract whereby one undertakes to pay or indemnify another as to loss from certain specified contingencies or perils, or to pay or grant a specified amount or determinable benefit in connection with ascertainable risk contingencies, or to act as [a] surety." NMSA 1978, § 59A–1–5 (Repl.Pamp.1995). To qualify as an "insured" under a policy of insurance, a party must either be a "named insured" (Class I) or establish that they were a driver or occupant of a covered vehicle involved in the accident (Class II). *See Herrera v. Mountain States Mut. Casualty Co.*, 115 N.M. 57, 58, 846 P.2d 1066, 1067 (1993) (defining Class I and Class II insureds).

■ 13. As shown on the declarations page of the vehicle insurance policy in question, the named insureds are Saavedra School Bus Company and Jose A. Saavedra, individually. The policy defines the name insured as "you" and "[i]f you are an individual, any 'family member.'" The term "family member" is defined as an individual related by blood, marriage or adoption, who is a resident of the named insured's household.

14. Appellant's response to General's motion for summary judgment is not supported by any affidavit or other evidence indicating that she came within the ambit of either a Class I insured or a Class II insured. The term "family member" does not extend to employees of Saavedra. Moreover, Appellant does not assert that she is either a named insured or a household member of the named insured. The policy expressly excludes any coverage for bodily injury to "[a]n employee of the 'insured' arising out of and

---

3. In reviewing contentions concerning the propriety of an award granting summary judgment, we apply the standard approved by our Supreme Court in *State ex rel. Regents of New Mexico State University v. Siplast, Inc.*, 117 N.M. 738, 740, 877 P.2d 38, 40 (1994).

in the course of employment by the 'insured.'" For these reasons, we conclude that the district court properly granted summary judgment in favor of General.

## CLAIM AGAINST APS

15. We turn next to Appellant's claim against APS. Appellant argues that the district court improperly granted summary judgment in favor of APS because APS was a self-insurer of liability claims filed against it, and Section 66–5–301(A) requires that any motor vehicle liability insurance "insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person and for injury to or destruction of property," include UM/UIM coverage in the amount specified by law.

16. Appellant asserts that self-insurers are not exempt from the laws of New Mexico and the statutory requirement that a party's primary insurance provide for UM/UIM coverage. Appellant also argues that APS was obligated to provide liability insurance for Saavedra under the contract entered into between APS and Saavedra, and that Appellant was an "insured" within the contemplation of such contract.

17. The contract between APS and Saavedra is on a generic form prescribed by the State Department of Education, and requires APS to "carry bodily injury liability, property damage liability, and medical payments insurance" on each of the buses listed in the agreement during the time the vehicles are operated under the contract.

18. APS contends that the district court properly granted summary judgment dismissing Appellant's claim against it because Saavedra was an independent contractor and APS was not obligated under its contract with Saavedra or any other agreement cited by Appellant to provide motor vehicle insurance coverage to Appellant or Saavedra's other employees who are injured during the course and scope of their employment. We agree. Where the facts are uncontroverted, the construction and effect of an insurance contract constitutes a question of law, not an issue of fact. *See Garrison v. State Farm Mut. Auto. Ins. Co.*, 20 Kan. App.2d 918, 894 P.2d 226, 230 (1995). APS's

motion and memorandum in support of its motion for summary judgment recited, as undisputed facts, that Appellant was employed by Saavedra; that APS was contractually obligated under an agreement with Saavedra to carry liability, property damage, and medical insurance on each of the buses operated by Saavedra while they were in operation; that APS purchased a commercial automobile liability insurance policy from ISLIC; that APS is the named insured on the ISLIC policy; that the ISLIC policy was the only policy in effect at the time of Appellant's accident; that APS informed its insurance broker that it wished to reject UM coverage in such policy; and that the ISLIC policy contains an endorsement expressly excluding UM coverage.

19. After APS filed its motion for summary judgment, Appellant's response to the motion stated in applicable part:

The only fact [Appellant] disputes in Defendant APS' Statement of Undisputed Facts is fact number three which states that: "The contract [between APS and the private bus carriers] does not require APS to provide uninsured/underinsured motorist coverage for bus contractors. The State Department of Education prescribes that APS is in fact required to provide liability and uninsured/underinsured insurance to the bus contractors." [Citation omitted.]

20. Appellant did not file any affidavits or refer to any statutes or regulations specifically requiring APS to obtain UM coverage for Saavedra or its employees. Nor are we aware of any. Our scrutiny of the APS contract indicates that the only reference to insurance in the policy provides that "[t]he Board [of Education] shall carry bodily injury liability, property damage liability, and medical payments insurance on the bus for the time it is operated under this contract." We think it is clear that such provision requires APS to obtain only "liability" insurance for the bus driven by Appellant and not UM or UIM coverage.

21. On appeal Appellant seeks to raise what she claims to be a number of factual issues surrounding ISLIC's and General's policies, and the APS contract with

Saavedra. For example, Appellant asserts that Saavedra relied on APS to purchase UM coverage on its behalf. Additionally, Appellant contends that factual issues exist as to whether Saavedra is a named insured under the ISLIC policy, whether APS rejected UM coverage under ISLIC'S policy, and whether APS effectively rejected UM coverage on behalf of Saavedra. We do not agree that all the issues raised by Appellant are factual issues. In any event, we think these challenges and factual assertions come too late in the day. As noted above, Appellant's response to APS's motion for summary judgment recited that she only disputed one fact: whether the APS contract required it to carry UM coverage for the benefit of Saavedra. The other facts are deemed admitted. *See* SCRA 1986, 1–056(D)(2) (Repl.1992); *Richardson v. Glass*, 114 N.M. 119, 122, 835 P.2d 835, 838 (1992) (material facts set forth by moving party are deemed admitted unless specifically controverted).

22. Appellant has failed to properly controvert any of the factual matters which she attempts to raise on appeal. Careful examination of the language of the APS contract fails to reveal any provision obligating APS to obtain UM or UIM coverage on behalf of Saavedra or its employees. Moreover, Appellant's contention that she was a third-party beneficiary to a promise by APS to Saavedra that APS would provide UM coverage to Saavedra is not supported by any evidence in the record. *See Hansen v. Ford Motor Co.*, 120 N.M. 203, 205, 900 P.2d 952, 954 (1995) (party claiming third-party beneficiary of an agreement has burden of proving makers of agreement had that intent). Appellant fails to point to any written agreement or instrument obligating or evidencing such claim. A party against whom summary judgment is sought cannot defeat the motion and require a trial by a mere contention that an issue of fact exists. She must come forward with affidavits or other properly admissible evidence showing that a material disputed factual issue exists. *Blauwkamp v. University of N.M. Hosp.*, 114 N.M. 228, 232, 836 P.2d 1249, 1253 (Ct.App.), *cert. denied*, 114 N.M. 82, 835 P.2d 80 (1992). It is undisputed that Saavedra is an independent contractor that has contracted to provide bus service for APS. Absent a showing indicating the existence of a contractual agreement to the contrary, a party who contracts with an independent contractor to transport passengers is not required to carry UM/UIM coverage for the benefit of the drivers of vehicles owned or operated by an independent contractor. Absent a showing that Appellant is a third-party beneficiary under a specific contract, Appellant has no greater right against APS than does Saavedra.

23. Appellant alternatively argues that even if APS's contract with Saavedra does not expressly require APS to carry UM insurance on behalf of Saavedra or its employees, it nevertheless is implicitly required to do so. We think this argument too must fail. The contract between APS and Saavedra does not refer to any obligation to provide UM or UIM coverage. Appellant has failed to point to a statute, and we are not aware of any, which would require APS to provide UM/UIM coverage on behalf of Saavedra. We will not read into a contract provisions that the parties themselves have not seen fit to include. Nor do we read any of the provisions of Section 66–5–301 to require that APS carry such coverage on behalf of Appellant under the circumstances existing here.

24. We have carefully examined each of Appellant's related arguments and find them to be without merit.

*CONCLUSION*

25. Because we find that the district court properly concluded that Appellant was not an "insured" under any of the theories advanced in her complaint, we hold that the district court correctly granted summary judgment in favor of each of the Defendants on Appellant's claims of violation of the unfair trade practices provisions of the Insurance Code. The orders granting summary judgment are affirmed.

26. IT IS SO ORDERED.

ALARID, J., concurs.

HARTZ, J., concurs specially, with opinion.

HARTZ, Judge (Specially concurring).

I concur in the affirmance of the judgment below.

With respect to the claim against ISLIC, a liability insurer has no statutory duty to provide uninsured-motorist coverage if the "named insured" rejects such coverage. NMSA 1978, Section 66–5–301(C). APS rejected the coverage. Appellant contends on appeal that Saavedra was also a named insured, Saavedra did not waive uninsured-motorist coverage, and therefore ISLIC was not relieved of its duty to provide such coverage. The ISLIC policy, however, clearly includes only APS as a named insured. Moreover, Appellant cannot raise on appeal her contention that there is evidence to show that Saavedra was a named insured. Because she did not raise this contention prior to entry of the final judgment in favor of ISLIC, *see* SCRA 1986, 1–054(C)(2), she failed to preserve it for appellate review, *see* SCRA 1986, 12–216.

As for the judgment in favor of General, General did not issue a liability policy on the bus being driven by Appellant. A "liability policy" is one that "insur[es] against loss resulting from *liability* imposed by law." Section 66–5–301(A) (emphasis added). The only coverage provided by General with respect to Saavedra's buses was for physical damage to the buses resulting from collisions and other specified causes. The only liability coverage provided by General was for one specific automobile listed in the policy. Because the General policy did not provide liability coverage with respect to the bus, the statute requiring uninsured-motorist coverage is inapplicable. *See id.*

Finally, I agree with the majority of the panel that no statutory provision or contract term required APS to provide or carry uninsured-motorist coverage on the bus driven by Appellant.