2008-NMCA-099

189 P.3d 687

**Allen and Desiri PIELHAU, Individually and as Personal Representatives of the Estate of Jared Pielhau, their deceased son, Plaintiffs–Appellants,**

v.

**RLI INSURANCE COMPANY; Professional Insurors, Inc., d/b/a Brown, Seligman & Thomas; Mountain Insurance Services, Inc., The Insurance Brokers; The Independent Insurance Agents & Brokers of America, Inc.; The Independent Insurance Agents of New Mexico, Inc.; and Agency Administrative Services, Inc., Defendants–Appellees.**

No. 27,686.

Court of Appeals of New Mexico.

June 16, 2008.

Certiorari Granted, No. 31,208, July 25, 2008.

Law Office of James A. Branch, Jr., James A. Branch, Jr., Albuquerque, NM, for Appellants.

Huffaker & Moffett, LLC, Michael J. Moffett, Santa Fe, NM, Kunz Plitt Hyland Demlong & Kleifield, Steven Plitt, Joshua D. Rogers, Phoenix, AZ, for Appellees.

## OPINION

PICKARD, Judge.

{1} Allen and Desiri Pielhau (collectively Appellants), individually and as personal representatives of the estate of Jared Pielhau, their deceased son, appeal the district court's grant of summary judgment in favor of Appellee, RLI Insurance Company (RLI). Appellants contend that the umbrella policy they purchased from RLI violated New Mexico law and public policy because it excluded uninsured/underinsured motorist liability (UM/UIM) coverage and that disputed issues of material fact require reversal of summary judgment. They also argue that the district court erred in denying Appellants a declaratory judgment that RLI was required to provide UM/UIM coverage in the absence of a signed rejection waiving such coverage. We affirm.

## BACKGROUND

{2} Following the death of their nineteen-year-old son at the hands of an uninsured motorist, Appellants sought to recover UM/UIM benefits under their RLI umbrella insurance policy. The policy at issue provided excess insurance coverage up to $2,000,000 for personal, automobile, recreational vehicle, and watercraft liability claims. It also required Appellants to carry automobile liability insurance for at least $500,000 on each car they wanted covered by the umbrella policy, which they did. When Appellants purchased the RLI umbrella policy, it was their understanding that the policy provided excess and additional coverage for automobile liability, including UM/UIM protection, up to the sum of $2,000,000. The policy, however, contained an exclusion for UM/UIM coverage.

{3} Appellants wrote a letter to RLI requesting an explanation of benefits and seeking to recover UM/UIM benefits under the policy. In response, RLI advised Appellants that they were not entitled to UM/UIM benefits because the policy did not contain an endorsement including such coverage. At no time did Appellants sign an election that was endorsed, attached, stamped, or otherwise made a part of their policy, and which reflected or evidenced their decision to reject or reduce UM/UIM coverage.

{4} In their first amended complaint against RLI, Appellants sought a declaratory judgment that the RLI umbrella policy at issue in this case provides UM/UIM coverage. Appellants also alleged breach of contract, insurance bad faith, violations of the New Mexico Unfair Claims Practices Act, violations of the Unfair Practices Act, insurance agency negligence, and negligent misrepresentation. After the parties exchanged some discovery, RLI filed a motion for summary judgment on the ground that the personal liability umbrella policy did not provide UM/UIM coverage. In response to RLI's motion, Appellants filed a cross-motion for partial summary judgment, arguing that the endorsement excluding UM/UIM benefits in RLI's policy is contrary to New Mexico law and that RLI failed to comply with New Mexico law in not providing a rejection form signed by the insured and made part of the insurance policy. Appellants also filed a motion to compel RLI to further respond to written discovery requests relating to the question of whether RLI sells umbrella policies in other states with laws and regulations that require UM/UIM financial responsibility of motorists.

{5} The district court granted RLI's motion for summary judgment, denied Appellants' cross-motion for partial summary judgment, and denied Appellants' motion to compel. On appeal, Appellants seek reversal of the district court's orders on the grounds that (1) the RLI umbrella policy violated the public policy of the State of New Mexico by excluding UM/UIM motorist coverage, (2) triable issues of material fact exist as to whether RLI breached the umbrella policy at issue by failing to cover Appellants' UM/UIM claim and that its failure to pay UM/UIM benefits under the policy constitutes a bad faith insurance practice, (3) the RLI um-

brella policy is ambiguous as a matter of law as it pertains to UM/UIM benefits, (4) Appellants had a reasonable expectation based on the terms of the RLI policy that UM/UIM coverage was available under the policy, and (5) Appellants' discovery efforts should not have been limited solely to whether RLI previously sold umbrella policies with UM/UIM coverage in New Mexico.

## DISCUSSION

### Standard of Review

■ {6} We review de novo the granting of summary judgment, and we construe reasonable inferences from the record in favor of the party opposing the motion. *Celaya v. Hall*, 2004–NMSC–005, ¶ 7, 135 N.M. 115, 85 P.3d 239. Summary judgment is proper when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Hagen v. Faherty*, 2003–NMCA–060, ¶ 6, 133 N.M. 605, 66 P.3d 974. We review discovery orders for an abuse of discretion. *Hartman v. Texaco, Inc.*, 1997–NMCA–032, ¶ 20, 123 N.M. 220, 937 P.2d 979.

### The Umbrella Policy Does Not Violate Public Policy

{7} Appellants contend that the district court erred in granting RLI's summary judgment motion on the ground that RLI was not required to provide UM/UIM benefits under its personal liability umbrella insurance policy. They argue that such a decision violates the public policy of the State of New Mexico regarding uninsured motorist benefits, as set forth in our UM/UIM statute, NMSA 1978, § 66–5–301 (1983). Other courts have resolved this question on either of two grounds: (1) the type of UM/UIM statute or (2) the type of insurance. *See Rowe v. Travelers Indem. Co.*, 245 Mont. 413, 800 P.2d 157, 158 (1990). We discuss each approach in turn as it applies to the instant case.

{8} This Court took the first approach in *Archunde v. International Surplus Lines Insurance Co.*, 120 N.M. 724, 905 P.2d 1128 (Ct.App.1995). We examined our UM/UIM statute, which provides in pertinent part:

No motor vehicle or automobile liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person and for injury to or destruction of property of others arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in New Mexico with respect to any motor vehicle registered or principally garaged in New Mexico unless coverage is provided therein or supplemental thereto in minimum limits for bodily injury or death and for injury to or destruction of property as set forth in Section 66–5–215 NMSA 1978 and such higher limits as may be desired by the insured, but up to the limits of liability specified in bodily injury and property damage liability provisions of the insured's policy, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, and for injury to or destruction of property resulting therefrom, according to the rules and regulations promulgated by, and under provisions filed with and approved by, the superintendent of insurance.

Section 66–5–301(A).

■ {9} Our examination of Section 66–5–301(A) "fail[ed] to indicate a legislative intent to extend the reach of the statute beyond a motorist's primary automobile insurance policy. Therefore, in an excess policy, there is no statutory requirement mandating the inclusion of such coverage." *Archunde*, 120 N.M. at 726, 905 P.2d at 1130. In so holding, we noted that our interpretation and approach were consonant with those of other jurisdictions with similar UM/UIM statutes. In consideration of Appellants' argument that *Archunde* has been eroded over time, we today find occasion to discuss the national framework into which *Archunde* fits to this day.

{10} When considering the first question posed in *Archunde*, other states often discern between two types of uninsured motorist statutes: "minimum liability" and "full recovery" statutes. *See United Nat'l Ins. Co. v. DePrizio*, 705 N.E.2d 455, 461 (Ind.1999). "'Minimum liability' statutes require that motorists maintain a minimum level of liabili-

ty insurance and, therefore, a minimum level of uninsured coverage." *Rowe*, 800 P.2d at 159. "The policy in such states is to ensure that injured motorists can recover the same amount as would have been available from an insured motorist who maintained the minimum statutory limit of bodily injury liability coverage." *Id.; see Chavez v. State Farm Mut. Auto. Ins. Co.*, 87 N.M. 327, 329, 533 P.2d 100, 102 (1975) (noting that "the legislative purpose in creating compulsory uninsured motorist coverage was to place the injured policyholder in the same position, with regard to the recovery of damages, that he would have been in if the tortfeasor had possessed liability insurance" (internal quotation marks and citation omitted)).

"Full recovery" statutes, on the other hand, require insurers to issue uninsured motorist coverage equal to the amount of bodily injury liability insurance that the policy provides. For example, if the insurance policy has limits of $50,000/$100,000 for bodily injury liability, the insurer must also provide $50,000/$100,000 in uninsured motorist coverage.

*Rowe*, 800 P.2d at 159. "The policy underlying these statutes is to allow *full* recovery under the terms of any applicable policies when a person is injured by an uninsured motorist." *Id.* (internal quotation marks and citation omitted).

{11} "In states with minimum liability statutes[,] courts have typically found that the relevant statutes do not require that umbrella policies provide uninsured and underinsured [motorist] coverage." *DePrizio*, 705 N.E.2d at 461 (citing, among other cases, *Archunde* ). "The same is true of several minimum liability jurisdictions where the relevant statutes provide methods to increase the statutory minimum." *Id.* "[B]ecause the legislative purpose of these statutes is satisfied when policies compensate the victim to the same extent as they would have been had the tortfeasor ... complied with the minimum requirements of the state's financial responsibility laws, application of the statute to underlying policies is sufficient." *Id.* at 461–62. "Thus, an insured receives the full protection contemplated by statute when he purchases the underlying automobile policy,

and whatever additional coverage he does or does not obtain in an umbrella policy is a matter without the scope of that law." *Hartbarger v. Country Mut. Ins. Co.*, 107 Ill. App.3d 391, 63 Ill.Dec. 42, 437 N.E.2d 691, 694 (1982).

■ {12} We hold that our UM/UIM statute, which requires that coverage be provided "in minimum limits ... as set forth in Section 66–5–215 NMSA 1978 and such higher limits as may be desired by the insured, but up to the limits of liability specified in bodily injury and property damage liability provisions of the insured's policy," is a "minimum liability" statute. Section 66–5–301(A); *see DePrizio*, 705 N.E.2d at 461 & nn. 13 & 14. New Mexico has no requirement that uninsured coverage must equal the policy's coverage for bodily injury and property liability. Although, under the statute, the insured has the option of purchasing coverage up to these limits, coverage is statutorily required only to the minimum amounts set by the legislature. Accordingly, the policy purpose of the statute is met when the insured's underlying automobile coverage provides minimum UM/UIM coverage. Appellants in the instant case "received the protection of the mandatory uninsured motorist coverage statute through their primary automobile liability policy and were thus not left without the relief anticipated by [the UM/UIM] law." *Hartbarger*, 63 Ill.Dec. at 45, 437 N.E.2d at 694 (discussing *Matarasso v. Cont'l Cas. Co.*, 82 A.D.2d 861, 440 N.Y.S.2d 40 (1981) (mem. op.)).

{13} We further buttress our application of *Archunde* to the instant case by noting "the fundamental difference between umbrella liability policies and automobile policies," *DePrizio*, 705 N.E.2d at 462, a distinction some states have used to determine that their "minimum liability" statutes do not apply to umbrella policies. *See, e.g., Hartbarger*, 63 Ill.Dec. at 44–45, 437 N.E.2d at 693–94. These states "have discussed the unique nature of umbrella policies, which are a continuation of an underlying primary policy," and have noted that umbrella policies "provide at a modest cost broad coverage for catastrophic losses, and excess coverage over and above any type of primary coverage." *Rowe*, 800

P.2d at 159–60 (internal quotation marks and citation omitted). "While the excess coverage of an umbrella ... policy protects an insured and his business against liability from third parties, the uninsured motorist protection of the underlying primary policy does not involve liability claims against the insured from third parties." *Id.* at 160.

Before an umbrella policy is issued, a primary policy (the "underlying policy") must be in existence and this primary policy must by law provide uninsured motorist coverage. The umbrella policy assumes a risk of much less frequent occurrence, i.e., the risk of judgments in excess of primary policy limits, and accordingly carries premiums which reflect the lesser magnitude of this risk.

*Trinity Universal Ins. Co. v. Metzger*, 360 So.2d 960, 962 (Ala.1978). This consideration, as well as the national trend concerning "minimum liability" UM/UIM statutes, convince us that *Archunde* continues to be sound law in New Mexico, and we decline to overturn its holding today.

{14} Finally, Appellants argue that *Archunde* is factually distinguishable from the case at bar because the appellant in *Archunde* was neither a named insured nor the driver or occupant of a covered vehicle involved in the accident, whereas Appellants in this case are first-party and named insureds under their umbrella policy with RLI. We hold that this is a distinction without a difference. This is not a case in which coverage is contingent upon the status of the claimant, and we did not limit our holding in *Archunde* in any manner that would suggest that the case does not apply to Appellants' situation. In the absence of language in *Archunde* suggesting that its holding does not apply to certain classes of claimants, we decline to distinguish *Archunde* on this basis. Moreover, we note that over the course of our survey of the national case law discussed above, we did not encounter cases where the status of the claimant entered into a court's determination of whether public policy required the inclusion of UM/UIM benefits in umbrella policies under its state's UM/UIM statute, and Appellants do not cite to any such cases in their briefing. Where a party

cites no authority to support an argument, we may assume no such authority exists. *In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984).

## The Umbrella Policy's Exclusion of UM/UIM Coverage Was Unambiguous and Not Contrary to Public Policy

{15} The umbrella policy in question in this appeal contains an exclusion of UM/UIM coverage. The policy states: "This policy *does not provide coverage for* ... [n]o-fault, uninsured motorist, or underinsured motorist or any similar first party benefits to you or anyone else entitled to coverage under this policy, unless the policy is endorsed to provide such coverage." Appellants contend that this exclusion is invalid under the holding of *GEICO v. Welch*, 2004–NMSC–014, ¶ 3, 135 N.M. 452, 90 P.3d 471, in which our Supreme Court held that household exclusions in umbrella policies are void as against public policy. According to Appellants, this holding should be read to include all exclusions to umbrella policies, not just household member exclusions. We disagree.

{16} The Court in *GEICO* distinguished that case from *Archunde* in a manner that renders *GEICO* inapposite to Appellants' case. In *GEICO*, the Court was not being asked to decide whether an umbrella policy included a type of coverage, such as UM/UIM coverage, that was not already explicitly included therein. *Id.* ¶ 16. Instead, where excess auto coverage was already provided by an umbrella policy, the Court was being asked to determine whether public policy prohibited the exclusion from this coverage of "the arbitrarily designated class of household member victims for no legitimate reason." *Id.* (internal quotation marks and citation omitted). The Court held that such an exclusion was unenforceable. *Id.* ¶ 20.

{17} Following *GEICO*, therefore, it may fairly be argued that where an insurer has provided UM/UIM coverage under an umbrella policy, the insurer cannot then limit UM/UIM coverage based upon a household exclusion. However, that argument has no bearing on the instant case. *Archunde* directly addressed whether an umbrella insurer has an obligation to offer or provide UM/

UIM coverage in the first place, whereas *GEICO* addressed whether and to what extent such coverage may be limited once it has been provided. There is no evidence in the record in the instant case that UM/UIM coverage was provided as part of the personal umbrella policy at issue. To the contrary, UM/UIM coverage was specifically and unambiguously excluded from Appellants' umbrella policy. Accordingly, *GEICO* cannot apply to the facts before us. *Archunde* is the controlling law, and Appellants' reliance on *GEICO* fails.

### New Mexico Regulations

■ {18} Appellants also contend that the court erroneously permitted RLI to limit UM/UIM benefits coverage in Appellants' umbrella policy in violation of New Mexico regulations. Appellants correctly note that Appellants had the right to reject or limit UM/UIM coverage in their primary insurance policy under Section 66–5–301(C) and that such election must have been done in accordance with the rules and regulations implemented by the superintendent of insurance. *See* § 66–5–301(A); *Romero v. Dairyland Ins. Co.*, 111 N.M. 154, 156, 803 P.2d 243, 245 (1990). Appellants bring to our attention the New Mexico insurance regulation providing that a consumer's rejection of UM/UIM coverage is effectuated only once the rejection has been " 'endorsed, attached, stamped or otherwise made a part of the policy of bodily injury and property damage insurance.' " *Romero*, 111 N.M. at 155, 803 P.2d at 244 (quoting Regulations of the New Mexico Department of Insurance, Art. 5, Part 4, Ch. 66, Rule 1, § 5–1–4). Appellants contend that RLI's failure to follow this regulation with respect to their umbrella policy defeats summary judgment on their claims, because no signed rejection of such an endorsement was attached to the policy and RLI denied UM/UIM coverage under Appellants' umbrella policy because Appellants did not sign an endorsement to specifically add UM/UIM coverage to the policy.

■ {19} Although there can be no doubt that the New Mexico uninsured motorist statute requires that UM/UIM coverage be included in every primary automobile policy

issued in New Mexico and that the insurance regulation cited above governs the rejection of UM/UIM coverage on such a policy, at issue in this case is not Appellants' primary automobile policy, but their umbrella policy. However, because under *Archunde* an insurer is not required to provide UM/UIM coverage in an umbrella policy, it stands to reason that there is no need for a purchaser of such a policy to reject such coverage or for the insurer to comply with insurance regulations governing rejection of such coverage where such coverage is not offered. Accordingly, because the UM/UIM statute does not require UM/UIM coverage in umbrella policies, the regulation cited above simply does not apply to Appellants' umbrella policy as it would to their primary automobile policy. There was no need for Appellants to reject that which is not required under New Mexico law to be included in their umbrella policy. We hold that Appellants' regulatory argument is without merit and that the district court did not err in denying Appellants a declaratory judgment that RLI was required to provide UM/UIM coverage in the absence of a signed rejection waiving such coverage.

### Other Issues

■ {20} We also affirm the district court on a host of additional issues that arise out of RLI's refusal to cover UM/UIM benefits under Appellants' umbrella policy. We hold first that the policy is not ambiguous on its face with regard to whether UM/UIM coverage was included. Although we are mindful of the relative difference in bargaining power between insurance companies and the typical insured, *Sanchez v. Herrera*, 109 N.M. 155, 159, 783 P.2d 465, 469 (1989), our review of the policy documents and renewal forms in the record reveal no ambiguity such as may "arise when separate sections of a policy appear to conflict with one another, when the language of a provision is susceptible to more than one meaning, when the structure of the contract is illogical, or when a particular matter of coverage is not explicitly addressed by the policy." *Ponder v. State Farm Mut. Auto. Ins. Co.*, 2000–NMSC–033, ¶ 11, 129 N.M. 698, 12 P.3d 960 (internal quotation marks and citation omit-

ted). We agree with RLI's contention that the umbrella policy is not ambiguous on its face. "In order to refute [well-established] presumptions in favor of the insured, the insurer must be able to give evidence that supports the construction for which it advocates." *Rummel v. Lexington Ins. Co.,* 1997–NMSC–041, ¶ 23, 123 N.M. 752, 945 P.2d 970. Having reviewed the policy documents in the record, we hold that RLI has met its burden. The policy provides the necessary evidence: as discussed above, the umbrella policy expressly excludes UM/UIM benefits.

■■■■ {21} Next, Appellants argue that they reasonably expected that the personal liability umbrella policy included UM/UIM coverage. They argue that ambiguity arises because the RLI umbrella policy "could be interpreted to mean that the umbrella policy provided UM/UIM coverage in the same manner as general automobile liability policies." That is to say, Appellants state that the umbrella policy required them to carry an underlying primary automobile insurance, and upon their procurement of this policy, Appellants were entitled under New Mexico law to UM/UIM coverage in an amount equal to the liability limits unless they expressly rejected or reduced UM/UIM coverage. *See* § 66–5–301; *Romero,* 111 N.M. at 156, 803 P.2d at 245. Appellants seem to be arguing that it would have been inherently reasonable for Appellants to have assumed that the UM/UIM statute operates to require the same level of UM/UIM coverage in both their automobile policy and their personal liability umbrella policy and that the procedures for rejecting coverage were the same for both policies. We decline to hold, however, that such alleged confusion on Appellants' part could have been caused by any ambiguity in the RLI umbrella policy itself. As discussed above, the umbrella policy unambiguously excluded UM/UIM coverage. "When a court interprets the terms of an insurance policy that is unclear and ambiguous, the reasonable expectations of the insured guide the analysis. However, when the policy language is clear and unambiguous, we must give effect to the contract and enforce it as written." *Truck Ins. Exch. v. Gagnon,* 2001–NMCA–092, ¶ 7, 131 N.M. 151,

33 P.3d 901 (citation omitted). Because we hold that the plain language of the umbrella policy is unambiguous in excluding UM/UIM coverage, Appellants' reasonable expectations argument fails as a matter of law.

■■ {22} Next, we address Appellants' contention that the exclusionary language included in the annual renewal forms was ambiguous. These forms provide: "I further understand that the policy will not provide uninsured or underinsured motorist coverage (unless uninsured or underinsured motorist coverage is required by state law for personal umbrella or excess liability)." Appellants argue that they are not lawyers and could not have known when purchasing the policy whether UM/UIM coverage is required by state law for personal umbrella policies. However, as noted by Appellants, "[t]he insurer's interpretation, especially when it concerns an exclusion to overall coverage, must be clearly expressed in the policy." *Rummel,* 1997–NMSC–041, ¶ 23. As discussed above, the original policy clearly excluded UM/UIM coverage. Appellants may not create ambiguity in the clearly expressed exclusionary language of the original policy by asserting that the language of the subsequent renewal forms was ambiguous.

■■ {23} Finally, Appellants argue that there exist genuine issues of material fact on which a jury could find that RLI's actions constituted a breach of contract or were in bad faith. However, because we have held that the umbrella policy at issue was valid under New Mexico law and unambiguous on its face, Appellants' contentions that RLI breached the terms of the policy by refusing to cover UM/UIM losses and that such refusal was in bad faith necessarily fail.

## Motion to Compel

■■ {24} In response to RLI's motion for summary judgment, the district court permitted Appellants to conduct discovery on the limited issue of whether RLI had previously sold umbrella insurance policies providing UM/UIM coverage in New Mexico. The district court refused to permit Appellants to inquire whether RLI sold such policies in other states that have uninsured motorist

statutes and policies similar to New Mexico's. Appellants contend that the district court's discovery ruling was an abuse of discretion because the court's refusal to permit such discovery prevented Appellants from obtaining facts that would have established RLI's bad faith or would have created triable issues of fact. However, Appellants do not establish how an examination of RLI's insurance practices in states that have similar UM/UIM laws and regulations would have aided the district court in determining the issue before the court on summary judgment: whether, under New Mexico law, UM/UIM coverage is required in umbrella policies. Accordingly, we hold that the court did not abuse its discretion in limiting discovery to umbrella policies issued in New Mexico.

## CONCLUSION

{25} We affirm the district court's orders granting summary judgment for RLI, denying Appellants' cross-motion for partial summary judgment, and denying Appellants' motion to compel.

{26} **IT IS SO ORDERED.**

WE CONCUR: JONATHAN B. SUTIN, Chief Judge, and RODERICK T. KENNEDY, Judge.