#25757-rev & rem-JKK

**2011 S.D. 39**

IN THE SUPREME COURT

OF THE

STATE OF SOUTH DAKOTA

* * * *

FLOYD DEMARAY and
JAMES HAGEMANN,                                    Plaintiffs and Appellees,

    v.

DE SMET FARM MUTUAL
INSURANCE COMPANY,                                 Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
LAKE COUNTY, SOUTH DAKOTA

* * * *

HONORABLE TIM D. TUCKER
Judge

* * * *

MARK V. MEIERHENRY
WILLIAM BLEWETT of
Meierhenry & Sargent, LLP                          Attorneys for plaintiffs
Sioux Falls, South Dakota                          and appellees.

LARRY M. VON WALD of
Beardsley, Jensen and Von Wald, Prof. LLC          Attorneys for defendant
Rapid City, South Dakota                           and appellant.

* * * *

ARGUED ON MARCH 23, 2011

OPINION FILED **07/20/11**

#25757

KONENKAMP, Justice.

[¶1.] Insureds sued their insurance company for breach of its duty to defend in a pollution suit. The circuit court granted summary judgment for the insureds, ruling that it appeared from the face of the complaint brought by a third party against the insureds that the alleged claim, if true, fell within policy coverage, and therefore, the insurance company breached its duty to defend. On appeal, we reverse because the policy language is unambiguous, and the complaint asserted no claim that would arguably invoke coverage.

## Background

[¶2.] On July 16, 2007, the Alvine Family Limited Partnership brought suit against Floyd Demaray and James Hagemann for negligence, res ipsa loquitur, nuisance, and trespass, alleging "repeated tortious activity in discharging of pollutants into lakes and streams" on Alvine's property. The complaint also averred that Hagemann's cattle operation, which is on land leased by Demaray, "intermittently ha[d] discharged and will continue to discharge animal and other wastes and process waste water" into lakes and streams on Alvine's property. According to Alvine, "[t]he recreational, aesthetic and environmental interests [of its property] are being and will be adversely affected by [Hagemann's] past and continuing illegal discharges." Alvine sought an injunction banning any discharge of further pollutants, an order requiring Demaray and Hagemann to clean the water, and compensatory and punitive damages.

[¶3.] Demaray and Hagemann own separate, but identical, insurance policies with De Smet Farm Mutual Insurance Company. On July 23, 2007,

-1-

Demaray and Hagemann notified De Smet of Alvine's lawsuit. The next day De Smet gave notice by mail of its intent to decline defense of the suit. It asserted that it owed no duty to defend under the insurance contract because the alleged injury arose out of "the discharge, dispersal, release, or the escape of pollutants into or upon land, water or air." Demaray and Hagemann obtained their own defense counsel. They defended the matter through trial, where a jury ruled in their favor. We affirmed in *Alvine Family Limited Partnership v. Hagemann*, 2010 S.D. 28, 780 N.W.2d 507.

[¶4.] In March 2010, Demaray and Hagemann sued De Smet alleging that the company breached its duty to defend them in the Alvine lawsuit. They sought indemnification for all costs and fees incurred as a result. On stipulated facts, both sides moved for summary judgment. While acknowledging that the insurance contract contains a pollution exclusion, Demaray and Hagemann argued that an exception to the exclusion invoked De Smet's duty to defend. That exception covers "bodily injury or property damage arising out of the sudden and accidental discharge, dispersal, release or escape into or upon land . . . of pollutants used in or intended for use in normal and usual farming activities[.]" Relying on this same language, De Smet asserted that the alleged pollution was not from a "sudden and accidental" discharge, but from intermittent and repeated discharges, as stated in the Alvine complaint.

[¶5.] The circuit court ruled that the Alvine complaint alleged a claim that, if proved true, would have fallen within the exception's coverage. Thus, the court held that De Smet owed Demaray and Hagemann a duty to defend. It granted

Demaray and Hagemann's motion for summary judgment.  De Smet appeals

asserting that the allegations in the Alvine complaint did not give rise to a duty to

defend under the insurance policy.

## Analysis and Decision

[¶6.]        De Smet maintains that the circuit court erred when it interpreted the

Alvine complaint to allege a claim for pollution discharge that was "sudden and

accidental."  Because the Alvine complaint used words such as "intermittently,"

"repeated," "past," and "continuing," De Smet argues that such language cannot be

construed to mean Alvine arguably alleged a claim for a "sudden and accidental"

discharge or release.  Moreover, De Smet faults the court for considering certain

evidence from the Alvine trial in support of its decision.  In that trial, testimony was

given that a sudden rainstorm caused flooding and washed manure onto Alvine's

property.  The court relied on this testimony to find support in the Alvine complaint

that a sudden and unexpected pollution occurred.  But De Smet contends that the

focus must be on the initial discharge, not any subsequent migration of the

pollution.

[¶7.]        Demaray and Hagemann contend that the Alvine complaint arguably

asserted a cause of action for a sudden and accidental discharge.  In their view, the

Alvine complaint failed to allege that the discharges were intentional, thus it is

immaterial that the words "intermittently," "repeated," and "continuing" were used.

They claim that because the complaint alleged a cause of action for negligence, De

Smet owed a duty to defend.  Demaray and Hagemann also contend that the court

was entitled to consider the facts established at the underlying trial, which support that the alleged pollution was the result of a sudden and unexpected event.

[¶8.]       Statutory construction and insurance contract interpretation are questions of law reviewable de novo. *Auto-Owners Ins. Co. v. Hansen Housing, Inc.*, 2000 S.D. 13, ¶ 10, 604 N.W.2d 504, 509 (citations omitted). To ascertain whether a duty to defend exists we look to the complaint and "other evidence of record." *State Farm Fire & Cas. Co. v. Harbert*, 2007 S.D. 107, ¶ 18, 741 N.W.2d 228, 234 (quoting *North Star Mut. Ins. Co. v. Kneen*, 484 N.W.2d 908, 912 (S.D. 1992)); *see also S.D. State Cement Plant Comm'n v. Wausau Underwriters Ins. Co.*, 2000 S.D. 116, ¶ 15, 616 N.W.2d 397, 402. An insurer's duty to defend is much broader than its duty to provide coverage. *S.D. State Cement Plant Comm'n*, 2000 S.D. 116, ¶ 15, 616 N.W.2d at 402 (citation omitted). The duty to defend need only arguably appear on the face of the pleadings. *Hawkeye-Sec. Ins. Co. v. Clifford*, 366 N.W.2d 489, 491 (S.D. 1985). Assuming the allegations in the complaint are true, if an alleged claim falls within policy coverage, a duty to defend exists. *Id.* Any doubts should be resolved in favor of the insureds. *Id.*

[¶9.]       Demaray and Hagemann argue that De Smet has the burden of proving that (1) there was no duty to defend because the claims in the Alvine complaint clearly fall outside policy coverage, and (2) the exception to the policy exclusion did not apply. De Smet, on the other hand, asserts that Demaray and Hagemann bear the burden of proving that the exception to the exclusion invoked its duty to defend. Our case law is clear, the insurer bears the burden of proving that the allegations in the complaint clearly fall outside policy coverage, and

therefore, there is no duty to defend. *State Farm Fire & Cas. Co.*, 2007 S.D. 107, ¶ 18, 741 N.W.2d at 234 (quoting *State Farm Mut. Auto Ins. Co. v. Wertz*, 540 N.W.2d 636, 638 (S.D. 1995)). However, if the insurer meets that burden, and the insured alleges that an exception applies, the insured bears the burden of proving that coverage exists through the exception. *Fireman's Fund Ins. Cos. v. Ex-Cell-O Corp.*, 702 F. Supp. 1317, 1328-29 (E.D. Mich. 1988); *see also St. Paul Fire and Marine Ins. Co. v. Warwick Dyeing Corp.*, 26 F.3d 1195, 1200 (1st Cir. 1994); *Aydin Corp. v. First State Ins. Co.*, 959 P.2d 1213, 1216-17 (Cal. 1998).

[¶10.] Here, the policies issued by De Smet to Demaray and Hagemann cover "property damage caused by an occurrence to which this coverage applies." Coverage L – Personal Liability. Further, De Smet "will defend a suit seeking damages if that suit resulted from . . . property damage not excluded under this coverage." *Id.* De Smet argues that its pollution exclusion precluded coverage. That exclusion provides: "This policy does not apply to . . . property damage which results directly or indirectly from . . . the discharge, dispersal, release, or the escape of pollutants into or upon land, water or air." EXCLUSIONS THAT APPLY TO COVERAGE L – PERSONAL LIABILITY, 19. The Alvine complaint alleged property damage resulting from the discharge of pollutants onto its land, which means Exclusion 19 applies. Therefore, De Smet has met its burden of proving that the alleged claims clearly fall outside policy coverage.

[¶11.] Nonetheless, Demaray and Hagemann argue that an exception to the exclusion arguably implicates coverage. That exception provides: "Exclusion 19 . . . will not apply to . . . property damage arising out of the sudden and accidental

discharge, dispersal, release or escape . . . of pollutants used in or intended for use in the normal and usual farming activities on the insured premises." *Limited Farm Pollution Liability Coverage Endorsement.* Therefore, if the Alvine complaint alleged a claim for discharge of pollutants that was arguably sudden and accidental, De Smet owed Demaray and Hagemann a duty to defend.

[¶12.] The phrase "sudden and accidental" is not defined in the insurance policy. Neither have we defined this phrase. And while several courts in other jurisdictions have interpreted similar policy language, there is no prevailing view. Moreover, a review of the cases reveals that many turn on unique facts and procedural implications. Yet there are essentially two views espoused by the courts. The first approach concludes that "sudden and accidental" is ambiguous because "sudden" is essentially a synonym for "accidental," both meaning unintended or unexpected, even though "sudden" also means "abrupt" or "immediate."[1] With this ambiguity, courts interpret the phrase "sudden and accidental" favorably for the insured, concluding that it means "unintended or unexpected" and not abrupt or immediate.

---

1. *Hecla Mining Co. v. N. H. Ins. Co.*, 811 P.2d 1083, 1092 (Colo. 1991); *Claussen v. Aetna Cas. & Sur. Co.*, 380 S.E.2d 686, 688 (Ga. 1989); *Outboard Marine Co. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1218 (Ill. 1992); *Morton Int'l, Inc. v. Gen. Accident Ins. Co.*, 629 A.2d 831, 871-72 (N.J. 1993); *Queen City Farms, Inc. v. Cent. Nat'l Ins. Co.*, 882 P.2d 703, 720-21 (Wash. 1994); *Just v. Land Reclamation, Ltd.*, 456 N.W.2d 570, 573 (Wis. 1990).

[¶13.] The second approach includes a temporal component by defining "sudden" as abrupt or immediate.[2] These courts do not find the phrase "sudden and accidental" ambiguous simply because the word "sudden" has multiple dictionary definitions or because it is a synonym for accidental. *See Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 152 (7th Cir. 1994) ("The existence of multiple dictionary definitions does not compel the conclusion that a term is ambiguous."). Rather, to these courts, the word "sudden" must be examined in context with the insurance policy at issue. As one court explained, "The use of the conjunctive in the phrase 'sudden and accidental' indicates the drafters' intent to define the two words differently, stating two separate requirements." *Sylvester Bros. Dev. Co. v. Great Cent. Ins. Co.,* 480 N.W.2d 368, 375 (Minn. Ct. App. 1992). Therefore, "[i]f 'sudden' meant 'unexpected,' 'sudden' would become superfluous and repetitious in the policies' use of the phrase 'sudden and accidental.'" *Id.*

---

2. *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv.*, 40 F.3d 146, 152-54 (7th Cir. 1994); *Smith v. Hughes Aircraft Co.*, 22 F.3d 1432, 1437-38 (9th Cir. 1994); *Anaconda Minerals Co. v. Stoller Chem. Co.*, 990 F.2d 1175, 1178-79 (10th Cir. 1993); *Bureau of Engraving, Inc. v. Federal Ins. Co.*, 5 F.3d 1175, 1177 (8th Cir. 1993); *N. Ins. Co. v. Aardvark Assocs., Inc.*, 942 F.2d 189, 193-94 (3d Cir. 1991); *A. Johnson & Co. v. Aetna Cas. & Sur. Co.*, 933 F.2d 66, 72-73 (1st Cir. 1991); *New York v. AMRO Realty Corp.*, 936 F.2d 1420, 1428 (2d Cir. 1991); *U.S. Fidelity & Guar. Co. v. Star Fire Coals, Inc.*, 856 F.2d 31, 34-35 (6th Cir. 1988); *Headley v. St. Paul Fire & Marine Ins. Co.*, 712 F. Supp. 745, 748 (D.S.D. 1989); *Dimmitt Chevrolet, Inc. v. Se. Fidelity Ins. Corp.*, 636 So.2d 700, 704 (Fla. 1993); *Lumbermens Mut. Cas. Co. v. Belleville Indus., Inc.*, 555 N.E.2d 568, 572 (Mass. 1990); *Upjohn Co. v. N. H. Ins. Co.*, 476 N.W.2d 392, 397 (Mich. 1991); *Bd. of Regents of the Univ. of Minn. v. Royal Ins. Co.*, 517 N.W.2d 888, 892 (Minn. 1994); *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.*, 597 N.E.2d 1096, 1102-03 (Ohio 1992).

#25757

[¶14.]       From our review of the divergent cases, we are persuaded by those

courts finding "sudden and accidental" unambiguous.  Recognizing that "sudden"

has multiple dictionary definitions, we construe "sudden" in the context of "sudden

and accidental" as used in this insurance contract.[3]  Such interpretation leads us to

deduce that "sudden" has a temporal meaning.  To conclude otherwise effectively

eliminates the word "sudden" from the policy.  It is our duty to construe an

insurance contract according to its plain meaning.  *Am. Family Mut. Ins. v. Elliot*,

523 N.W.2d 100, 102 (S.D. 1994).  If Demaray and Hagemann establish that the

Alvine complaint arguably alleged property damage arising from the abrupt or

immediate *and* unexpected or unintended discharge of pollutants, De Smet

breached its duty to defend.[4]

---

3.       Webster's dictionary defines the adjective "sudden" as (1) "happening,
         coming, made, or done quickly, without warning, or unexpectedly"; (2)
         "occurring without transition from the previous form, state, etc.; abrupt[.]"
         Webster's Encyclopedic Unabridged Dictionary of the English Language,
         1420 (1994).

4.       De Smet argues that the only "discharge" this Court should look to is the
         initial discharge of pollutants onto Demaray and Hagemann's land, and "not
         the movement of the manure from the cattle operation to Alvine's land."  As
         support, however, De Smet only cites cases involving industrial waste
         dumping, where the insured intentionally discharged pollutants onto land,
         which later caused property damage.  *See LaFarge Corp. v. Travelers Indem.
         Co.*, 118 F.3d 1511 (11th Cir. 1997); *Transamerica Ins. Co. v. Duro Bag Mfg.
         Co.*, 50 F.3d 370 (6th Cir. 1995); *St. Paul Fire & Marine Ins. Co. v. Warwick
         Dyeing Corp.*, 26 F.3d 1195 (1st Cir. 1994); *Hyde Athletic Indus., Inc. v. Cont'l
         Cas. Co.*, 969 F. Supp. 289 (E.D. Pa. 1997); *Upjohn Co. v. Aetna Cas. & Sur.
         Co.*, 850 F. Supp. 1342 (W.D. Mich. 1993); *Travelers Cas. & Sur. Co. v.
         Superior Court*, 75 Cal. Rptr. 2d 54 (Cal. Ct. App. 1998); *Standun, Inc. v.
         Fireman's Fund Ins. Co.*, 73 Cal. Rptr. 2d 116 (Cal. Ct. App. 1998).  Because
         the facts of this case are not similar to industrial waste dumping (i.e., the
         release of animal waste as a biological process), we decline to address De

                                                                    (continued . . .)

[¶15.]      The Alvine complaint sought various forms of damages and costs for Demaray and Hagemann's "*repeated* tortious activity in discharging of pollutants" onto Alvine's property.  (Emphasis added.)  The complaint asserted that the lakes and drainage are "and will be adversely affected by [Demaray and Hagemann's] *past and continuing* illegal discharges."  (Emphasis added.)  In its fact section, Alvine claimed that Demaray and Hagemann "*intermittently* have discharged and *will continue* to discharge animal and other waste and process waste water from [Hagemann's] operation into the lakes and drainages located" on Alvine's property. (Emphasis added.)

[¶16.]      Specifically related to its negligence cause of action, Alvine alleged that Demaray and Hagemann breached their duty to operate their production in a "safe, competent and prudent manner."  This breach, Alvine contended, has *"carried on* and *will carry on . . . and will continue* to cause [Alvine] damages[.]"  (Emphasis added.)  To support its claim of res ipsa loquitor, Alvine asserted that (1) the pollution discharge "would not ordinarily be expected to occur absent someone's negligence," (2) Demaray and Hagemann "were at all relevant times" in control of the cattle operation, and (3) the discharge of pollutants was not from Alvine's conduct.

[¶17.]      Alvine's third cause of action, nuisance, alleged that the discharge of pollutants "has polluted and contaminated and *will continue* to pollute and

_____

(. . . continued)
     Smet's argument.  Regardless, neither the initial discharge of pollutants by
     the cattle operation, nor the manure's migration was sudden and accidental.

contaminate the lakes and drainages on [Alvine's] property and is a nuisance that invades [Alvine's] right to [the] use and enjoyment of [its] own land." (Emphasis added.) Alvine also alleged a claim for trespass, asserting that the pollution "*has and will* result in an interference with the use of an intrusion upon" Alvine's water and property. (Emphasis added.) Finally, Alvine sought injunctive relief, contending that "[a]s a result of [Demaray and Hagemann's] discharge of pollutants *which continues to come* from [their] leasing and renting of land and the cattle operation, [Alvine's] property and the lakes and drainages . . . will continue to be invaded." (Emphasis added.)

[¶18.]        No language in the Alvine complaint arguably supported a cause of action for a "sudden and accidental" discharge of pollutants. "Intermittently" cannot be construed to mean abrupt or immediate. The complaint clearly made claims against Demaray and Hagemann for "past and continuing" and "repeated" discharges that "will continue." There is no immediacy or abruptness with a discharge that is intermittent, repeated, and likely to continue. Further, the "common, basic underlying theory to all of the claims" against Demaray and Hagemann was the discharge of pollutants onto Alvine's property. *See S.D. State Cement Plant Comm'n*, 2000 S.D. 116, ¶ 23, 616 N.W.2d at 406. Therefore, the fact that the complaint stated a cause of action for negligence will not alone invoke De Smet's duty to defend.

[¶19.]        Nonetheless, Demaray and Hagemann emphasize that certain facts from the underlying trial support that coverage was arguable under the Alvine complaint. During the Alvine trial, testimony was given that a rainstorm possibly

caused a *sudden* flooding, which transferred manure to Alvine's property. Notwithstanding that the circuit court went beyond the parties' stipulated facts and outside the record, as the transcript from the Alvine trial was not part of the record here, the evidence that a rainstorm caused a sudden flooding and migration of pollutants did not implicate De Smet's duty to defend. The Alvine complaint alleged causes of action against Demaray and Hagemann for long-term and routine discharges of pollutants. "[T]he majority of courts . . . decline to microanalyze an insured's long-term, routine disposal of [pollutants] in order to find discrete sudden and accidental polluting events." *Travelers Cas. & Sur. Co. v. Superior Court,* 75 Cal. Rptr. 2d 54, 66 (Cal. Ct. App. 1998); *see also LaFarge Corp. v. Travelers Indem. Co.*, 118 F.3d 1511, 1516-17 (11th Cir. 1997); *A. Johnson & Co., Inc. v. Aetna Cas. & Sur. Co.*, 933 F.2d 66, 75 (1st Cir. 1991); *U.S. Fid. & Guar. Co. v. Star Fire Coals*, 856 F.2d 31, 34-35 (6th Cir. 1988). The claimed damages in this case arose out of and from the alleged migration of pollutants originally discharged on Demaray's land. There was no claim that Demaray and Hagemann's discharges were sudden or accidental.

[¶20.] Because nothing in the Alvine complaint stated an arguable claim for a sudden and accidental discharge of pollutants, De Smet did not breach its duty to defend Demaray and Hagemann, and the circuit court erred when it granted Demaray and Hagemann's motion for summary judgment. The judgment is reversed, and the circuit court is directed to grant summary judgment for De Smet.

[¶21.] Demaray and Hagemann moved for appellate attorney's fees. They cite no statute or rule allowing fees in this appeal. *See* SDCL 15-26A-87.3 (fees may

be awarded where such are allowed).  With no statute allowing fees in this case,

Demaray and Hagemann's request is denied.

[¶22.]        Reversed and remanded.

[¶23.]        GILBERTSON, Chief Justice, and ZINTER and SEVERSON, Justices,

and RUSCH, Retired Circuit Court Judge, concur.

[¶24.]        RUSCH, Retired Circuit Court Judge, sitting for MEIERHENRY,

Retired Justice, disqualified.