#28009-r-GAS
**2017 S.D. 83**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

JODY STREFF and KEVIN STREFF,                    Plaintiffs and Appellants,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY and STATE
FARM FIRE AND CASUALTY COMPANY,          Defendants and Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE MARK SALTER
Judge

* * * *

RONALD A. PARSONS, JR.
A. RUSSELL JANKLOW of
Johnson Janklow Abdallah,
  Reiter & Parsons LLP
Sioux Falls, South Dakota                    Attorneys for plaintiffs
                                             and appellants.


HILARY L. WILLIAMSON
WILLIAM P. FULLER of
Fuller & Williamson LLP
Sioux Falls, South Dakota                    Attorneys for defendants
                                             and appellees.

* * * *

CONSIDERED ON BRIEFS
ON APRIL 24, 2017
REASSIGNED ON
SEPTEMBER 8, 2017
OPINION FILED **12/13/17**

#28009

SEVERSON, Justice (on reassignment).

[¶1.]       SDCL 58-11-9.4 requires underinsured motorist (UIM) coverage in "motor vehicle liability polic[ies]" of insurance.  Jody and Kevin Streff purchased a motor vehicle liability policy from one insurer.  They also purchased a personal liability umbrella policy from a separate but related insurer.  Both policies provided UIM coverage, but both excluded coverage for accidents caused by government vehicles.  After Jody was injured in an accident involving a government vehicle, a dispute arose concerning the enforceability of the exclusions.  The circuit court ruled that the exclusion was not enforceable in the motor vehicle liability policy but was enforceable in the umbrella policy.  The Streffs appeal the ruling regarding the umbrella policy.  We reverse, holding that the South Dakota UIM statute is not limited to primary insurance policies and that the statute contemplates additional coverage.  By extension, umbrella policies that include UIM coverage are subject to the same public policy prohibition on the exception of government vehicles from UIM coverage.

*Facts and Procedural History*

[¶2.]       The facts are not in dispute.  The Streffs purchased a motor vehicle liability policy (auto policy) from State Farm Mutual Automobile Insurance Company.  As required by SDCL 58-11-9.4, the auto policy included basic UIM coverage.  The Streffs paid an additional premium for additional UIM coverage in the amount of $250,000 per person and $500,000 per accident.

[¶3.]       The Streffs also purchased a separate $1 million personal liability umbrella policy (umbrella policy) from a related company—State Farm Fire and

Casualty Company. The umbrella policy provided excess liability coverage for exposures relating to homes, watercrafts, and undesignated automobiles. The Streffs paid an additional premium to add excess UIM coverage to the umbrella policy. The umbrella policy's definitions and exclusions governed the nature and extent of the UIM coverage.

[¶4.] The umbrella policy's definition of an "underinsured motor vehicle" excluded coverage for "land motor vehicle[s] . . . owned by, registered to, or rented to any government or any of its political subdivisions or agencies." The auto policy contained the same type of exclusion. Therefore, both policies excluded UIM coverage for accidents caused by government vehicles.[1]

[¶5.] In 2012, Jody was injured in an accident caused by a driver of a government owned vehicle. An Alamosa, Colorado police officer ran a red light, and his patrol vehicle collided with a second vehicle passing through the intersection. The second vehicle struck Jody, causing her injuries.

[¶6.] The Streffs settled their personal injury claims with the Alamosa Police Department. At the time of the accident, Colorado law limited the amount of damages recoverable against a public entity or employee to $150,000. The Streffs notified State Farm that they were willing to accept a $120,000 settlement from the police department. They also notified State Farm they intended to make a claim for

---

1. This government vehicle *exclusion* must be distinguished from the government owned vehicle *exception* in SDCL 58-11-9.4. The exclusion is a contractual provision that limits the nature of UIM coverage actually provided in a policy. The exception is a statutory provision permitting insurers to exclude UIM coverage in policies insuring government owned vehicles. *See id.* ("Any policy insuring government owned vehicles may not be required to provide underinsured motorist coverage.").

UIM benefits under both policies. State Farm waived its right of subrogation and gave the Streffs permission to accept the $120,000 settlement.[2] However, State Farm advised the Streffs that it reserved its right to assert applicable policy provisions for any UIM claim. The Streffs then filed this declaratory action to determine the enforceability of the government vehicle exclusion in both policies. The parties stipulated to the facts and filed cross-motions for summary judgment.

[¶7.] The circuit court granted both parties partial summary judgment. The court granted the Streffs' motion with respect to the auto policy. The court ruled that the government vehicle exclusion in the auto policy violated South Dakota public policy and was unenforceable because SDCL 58-11-9.4 required UIM coverage in "motor vehicle liability polic[ies]." However, the court granted State Farm's motion with respect to the umbrella policy. The court ruled that the same exclusion was enforceable in the umbrella policy because SDCL 58-11-9.4 did not require UIM coverage in such policies.

[¶8.] State Farm did not appeal the court's ruling, and it paid the Streffs $100,000 in UIM benefits under the auto policy (the difference between the $150,000 the Streffs were deemed to have recovered from the underinsured driver and the policy's UIM limits of $250,000). The Streffs now appeal the circuit court's decision upholding the government vehicle exclusion in the umbrella policy.

---

2.     Although $120,000 was only 80% of the maximum recovery permitted under Colorado law, the Streffs agreed that their UIM claim would be treated as though they had recovered $150,000 from the underinsured driver.

*Decision*

[¶9.]     The question on appeal is whether the public policy recognized by this Court regarding UIM coverage obtained in a "motor vehicle liability policy," *see* SDCL 58-11-9.4, extends to the insured's request for "additional [UIM] coverage" as indicated in SDCL 58-11-9.4. In other words, if our public policy dictates that an insurer cannot exclude UIM coverage in a "motor vehicle liability policy" for accidents involving government vehicles, does not that same public policy apply when, under SDCL 58-11-9.4, the insured requests additional UIM coverage through a supplemental umbrella policy?[3] Although insurance coverage is generally a matter of contract, UIM coverage is mandated under this State's public policy as set forth in SDCL 58-11-9.4.

> No motor vehicle liability policy of insurance may be issued or delivered in this state with respect to any motor vehicle registered or principally garaged in this state, except for snowmobiles, unless underinsured motorist coverage is provided therein at a face amount equal to the bodily injury limits of the policy. However, the coverage required by this section may not exceed the limits of one hundred thousand dollars because of bodily injury to or death of one person in any one accident and, subject to the limit for one person, three hundred thousand dollars because of bodily injury to or death of two or more persons in any one accident, unless additional coverage is requested by the insured. Any policy insuring government owned vehicles may not be required to provide underinsured motorist coverage.

---

3.     Because the facts are not in dispute, "our review is limited to determining whether the trial court correctly applied the law." *De Smet Ins. Co. of S.D. v. Pourier*, 2011 S.D. 47, ¶ 4 n.1, 802 N.W.2d 447, 448 n.1 (quoting *Kobbeman v. Oleson*, 1998 S.D. 20, ¶ 4, 574 N.W.2d 633, 635). "Statutory construction and insurance contract interpretation are questions of law reviewable de novo." *Id.* (quoting *Demaray v. De Smet Farm Mut. Ins. Co.*, 2011 S.D. 39, ¶ 8, 801 N.W.2d 284, 287).

*Id.* To determine whether the Streffs' umbrella policy can validly exclude UIM coverage for government vehicles, we concentrate on the statutory language expressing the legislative intent underlying South Dakota's uninsured motorist statute.

[¶10.] To assist in this analysis, we find instructive the cases decided by the Kansas Supreme Court: *Bartee v. R.T.C. Transportation Inc.*, 781 P.2d 1084 (Kan. 1989), and the Supreme Court of Vermont: *Insurance Co. of Pennsylvania v. Johnson*, 987 A.2d 276 (Vt. 2009). In *Bartee*, a family had two different policies with the same insurer: an automobile liability policy and a personal liability umbrella policy covering additional losses of up to $1 million. 781 P.2d at 1091. After the defendants' insurer became insolvent, Bartee filed a UIM claim on the family's automobile liability policy and personal liability umbrella policy. *Id.* at 1085-86. The Kansas Supreme Court considered whether Kansas's underinsured motorist statute required an umbrella policy to include UIM coverage. *Id.* at 1091; *see also* Kan. Stat. Ann. § 40-284(a) (West 2017).

[¶11.] The Kansas court reasoned that "[r]ather than classifying the decisions of other jurisdictions as a majority or minority rule . . . differing decisions stem from the policy considerations and legislative intent underlying each state's uninsured motorist statutes." *Bartee,* 781 P.2d at 1092. Concentrating on the different policy rationales of different jurisdictions, the court posited that:

> [s]tates which have statutes designed to provide a minimum level of recovery hold that the umbrella policies do not fall within the uninsured motorist statute, while states that have statutes designed to provide full recovery hold that the umbrella policy does fall within the uninsured motorist statute and must offer uninsured motorist coverage.

*Id.* at 1093.

[¶12.]     In *Johnson*, the Supreme Court of Vermont reviewed the distinction in UIM statutory language between state statutes requiring "minimum" coverage and the other states' statutory language requiring "full recovery." 987 A.2d at 284-86. The court determined that based on the language of Vermont's UIM statute, "the limits of UM/UIM coverage 'shall be the same' as those of the insured's basic liability coverage . . . ." *Id.* at 286 (quoting 23 V.S.A. § 941(c) (West 2017)).

[¶13.]     The court also agreed with conclusions made by the Supreme Court of Indiana, in that a UIM statute requiring

> UM/UIM coverage equal to liability coverage . . . "manifest[ed] an intent by [the] legislature to give insureds the opportunity for full compensation for injuries inflicted by financially irresponsible motorists. . . . To hold that an umbrella policy which by its terms covers risks above those insured in an underlying automobile policy does not apply to the underlying uninsured or underinsured motorist coverage would contravene that intent."

*Id.* at 284 (quoting *United Nat'l Ins. Co. v. DePrizio*, 705 N.E.2d 455, 461 (Ind. 1999)). The court concluded Vermont's UIM statute "by its terms, does apply to excess or umbrella policies that provide coverage against liability arising out of the ownership, maintenance, or use of a motor vehicle." *Id.* at 286.

[¶14.]     Likewise, here, SDCL 58-11-9.4 manifests South Dakota's public policy as expressed by the Legislature to give insureds the opportunity for full compensation for injuries inflicted by financially irresponsible motorists. Again, the statute states, in pertinent part:

> No motor vehicle liability policy of insurance may be issued . . . unless underinsured motorist *coverage is provided therein at a face amount equal to the bodily injury limits of the policy.*

> However, the coverage required by this section *may not exceed the limits of one hundred thousand dollars* because of bodily injury to or death of one . . . *unless additional coverage is requested by the insured.*

SDCL 58-11-9.4 (emphasis added). The statute allows for UIM coverage to exceed $100,000 if "additional coverage is requested by the insured." *Id.* Further, the statute calls for "coverage . . . at a face amount equal to the bodily injury limits of the policy." *Id.* Therefore, the statute also contemplates the inclusion of additional coverage requested by the insured.

[¶15.] In this case, the Streffs requested additional UIM coverage within a supplemental umbrella policy. Thus, the Streffs opted for additional coverage as allowed by the statute. They *requested* and *paid* a separate premium to obtain primary coverage under their auto insurance policy in the amount of $250,000 per person and $500,000 per accident. Then, they *requested* and *paid* a separate premium to purchase additional UIM coverage under the umbrella policy in the amount of $1 million. Under SDCL 58-11-9.4, they were allowed to do this to obtain additional protection for damages done unto them by uninsured motorists.

[¶16.] The Streffs were cautious enough to purchase additional coverage to protect themselves if damaged by an uninsured or underinsured motorist beyond their underlying policy limit of $250,000 per person and $500,000 per accident. They also paid additional premiums to cover such an event through their umbrella policy, up to $1 million. Because SDCL 58-11-9.4 does not limit UM/UIM coverage to primary policies and contemplates additional UM/UIM coverage, the statute contemplates umbrella policies that include UM/UIM coverage. Therefore, umbrella policies are subject to the same public policy prohibition invalidating an

exception from coverage for accidents involving government owned vehicles. Indeed, had the Streffs been struck by a privately owned vehicle instead of a government owned vehicle, they would have unquestionably been further compensated by the additional uninsured motorist coverage obtained in their umbrella policy.

[¶17.]     For these reasons, we reverse.

[¶18.]     GILBERTSON, Chief Justice, and WILBUR, Retired Justice, concur.

[¶19.]     ZINTER, Justice, and KERN, Justice, dissent.

[¶20.]     JENSEN, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.


ZINTER, Justice (dissenting).

[¶21.]     Motor vehicle liability policies and umbrella policies of insurance are fundamentally different; and the text of SDCL 58-11-9.4 mandating underinsured motorist (UIM) coverage only references "*motor vehicle liability polic*[*ies*]" that are "*issued with respect to*" motor vehicles that are "*registered or principally garaged in this state.*" The Legislature would not have included this limiting language if it meant nothing. Streffs' umbrella policy was not a "motor vehicle liability policy." Streffs' umbrella policy was also not "issued with respect to" their 2006 Mazda, their motor vehicle that was "registered and principally garaged in this state." *See id.* The circuit court should be affirmed for both reasons. Streffs' umbrella policy

was neither a "motor vehicle liability policy" nor any kind of policy that was issued "with respect to" their Mazda.[4]

[¶22.]     The majority disregards both limitations on the statute's application. Moreover, the Court extends the UIM mandate to *any* type of insurance policy when UIM coverage is requested by an insured. *Supra* ¶ 16. The Legislature and the Division of Insurance will certainly be surprised to learn that ever since 1975— when the Legislature first began requiring UIM coverage in "motor vehicle liability policies"—it was also mandating UIM insurance in other types of policies if requested by the insured. The statute does not say any of this. And in my view, it is a legislative rather than judicial function to *extend* the public policy in the statute to other types of insurance. I respectfully dissent.

I

[¶23.]     Statutory interpretation must begin with the statute's text. *Hofer v. Redstone Feeders, LLC*, 2015 S.D. 75, ¶ 15, 870 N.W.2d 659, 662. There is no dispute that SDCL 58-11-9.4 only references *motor vehicle liability policies*. There is also no dispute that the policy at issue here was not a motor vehicle liability policy: it was an excess umbrella policy that was issued for home, boat, and

---

4.     These statutory requirements cannot be ignored. They clearly circumscribe the UIM coverage mandate. "On numerous grounds, a majority of jurisdictions treat 'automobile or vehicle insurance,' or some derivation thereof, as a term of art with a meaning distinguishable from the references to motor vehicles found in an umbrella policy." *Dickau v. Vt. Mut. Ins. Co.*, 107 A.3d 621, 630-31 (Me. 2014). Indeed, the insurance policies referenced in this type of UIM statute encompass "a particular class of insurance policies" that provide coverage at the first level of loss and are "inherently tethered to the ownership of a particular motor vehicle and the activity of driving." *See Apodaca v. Allstate Ins. Co.*, 255 P.3d 1099, 1105 (Colo. 2011); *accord Dickau*, 107 A.3d at 631. Umbrella policies are fundamentally different.

undesignated automobile coverage. Although Streffs' umbrella policy also provided some limited UIM coverage, their umbrella policy was not "transformed into a[] . . . 'motor vehicle liability policy'" simply because Streffs requested optional UIM coverage. *See Apodaca v. Allstate Ins. Co.*, 255 P.3d 1099, 1105 (Colo. 2011). "[I]t would be equally inaccurate to label [Streffs'] umbrella policy as a[] . . . 'boat policy' or 'homeowner's policy.'" *Id.*

[¶24.]     The majority avoids dealing with the difference in the types of insurance policies by reframing the issue. In the Court's view, the question today is whether the public policy regarding UIM coverage required in "motor vehicle liability policies" should be extended to an insured's request for that coverage in an "umbrella policy." *Supra* ¶ 9. The Court rhetorically asks: "[I]f our public policy dictates that an insurer cannot exclude UIM coverage in a 'motor vehicle liability policy' for accidents involving government vehicles, does not that same public policy apply when . . . the insured requests additional UIM coverage through a supplemental umbrella policy?" *Supra* ¶ 9. The answer to that question is straightforward. Even if the public policy should be extended to other types of insurance, that is a legislative prerogative. After all, the Legislature has considered the UIM statute six times in the last forty years and never once even suggested that it was regulating any policy other than "motor vehicle liability polic[ies]."[5] It

---

5.     Since it was enacted in 1975, all six versions of SDCL 58-11-9.4 have only regulated "motor vehicle liability polic[ies]." 1975 S.D. Sess. Laws ch. 315, § 1. *See also* 1997 S.D. Sess. Laws ch. 286, § 2; 1989 S.D. Sess. Laws ch. 424; 1988 S.D. Sess. Laws ch. 394, § 1; 1986 S.D. Sess. Laws ch. 418, § 1; 1981 S.D. Sess. Laws ch. 359, § 1.

follows that until the Legislature acts, the public policy set forth by SDCL 58-11-9.4 does not apply to other insurance.

[¶25.] Even if we are to ignore the Legislature's description of the type of policy the statute is regulating, the statute's text contains a second limitation: the policy must be issued in this state *with respect to a motor vehicle registered or principally garaged* in this state. SDCL 58-11-9.4. This Court has specifically recognized that this statutory language is a restriction on the application of the companion uninsured motorist statute. We held that even if the "purpose" of the statute is to provide more "coverage" for the insured, the statutory mandate does not apply unless the "policy" itself has been issued with respect to a motor vehicle that is "registered or principally garaged in this state." *Milinkovich v. Progressive Cas. Ins. Co.*, 2013 S.D. 16, ¶¶ 9-10, 827 N.W.2d 366, 368. As this Court unanimously did just four years ago in *Milinkovich*, we should apply rather than "overlook" this specific legislative limitation in the text. *See id.*

## II

[¶26.] The majority holds that unconditional UIM coverage is mandated here because: (1) the statute requires optional coverage if requested by the insured; and (2) the Legislature enacted SDCL 58-11-9.4 to provide insureds with a "full compensation." *See supra* ¶ 14. The majority views the statute as an "opportunity for full compensation." *Supra* ¶ 14. The majority's "full compensation" purpose is taken from court decisions in Kansas and Vermont. *See Bartee v. R.T.C. Transp., Inc.*, 781 P.2d 1084 (Kan. 1989); *Ins. Co. of the State of Pa. v. Johnson*, 987 A.2d 276 (Vt. 2009).

[¶27.]     Even if statutory interpretation permitted consideration of a statute's purpose and opportunities before its text—which it does not—the rationale of *Bartee* and *Johnson* is not applicable under our statute. The Kansas and Vermont courts held that their statutes required UIM coverage in umbrella policies only because their statutes did not limit coverage to a specific amount: those statutes mandated unlimited coverage "equal" to the policy's liability limits. *See Bartee*, 781 P.2d at 1094 (quoting Kan. Stat. Ann. § 40-284 (Supp. 1988)); *Johnson*, 987 A.2d at 286.[6] Because their statutes mandated "equal coverage" without limitation, those courts concluded that the purpose of their statutes was to provide a "full recovery"; and requiring coverage in umbrella policies achieved that purpose. *Bartee*, 781 P.2d at 1094-95; *Johnson*, 987 A.2d at 286. However, SDCL 58-11-9.4 is much different: it is not a "full recovery" statute. *See id.*

---

6.     The majority does not mention the fact that the Kansas and Vermont analysis is far from being uniformly accepted. Many states reject the distinction between "minimum coverage" and "full recovery." *See Mass v. U.S. Fid. & Guar. Co.*, 610 A.2d 1185, 1194 & n.16 (Conn. 1992) (rejecting distinction between "minimum coverage" and "full recovery" statutes and concluding umbrella policies are not subject to UIM statute despite requiring equal coverage); *Dickau*, 107 A.3d at 628-29 (same); *United Servs. Auto. Ass'n v. Wilkinson*, 569 A.2d 749, 754-55 (N.H. 1989) ("While we recognize the legislature's intention to require uninsured motorist coverage to equal motor vehicle liability coverage, in whatever amounts it is purchased, we do not assume the legislature intended this requirement to apply to whatever form the coverage takes."); *see also Stoumen v. Pub. Serv. Mut. Ins. Co.*, 834 F. Supp. 140, 142 (E.D. Penn. 1993) ("[T]his court does not believe that the type of uninsured motorist statute that a legislature chooses to adopt is dispositive of the issue of whether the legislature also intends to include umbrella policies within the statute's reach."); *Apodaca*, 255 P.3d at 1106 (rejecting the distinction because it oversimplifies UIM statutes); *Rowe v. Travelers Indem. Co.*, 800 P.2d 157, 159 (Mont. 1990) ("In this case, however, both parties agree that the distinction between 'minimum liability' and 'full recovery' statutes is meaningless.")

[¶28.] Concededly, like the Kansas and Vermont statutes, SDCL 58-11-9.4 provides that UIM coverage must be provided "at a face amount equal to the bodily injury limits of the policy." But unlike Kansas and Vermont, SDCL 58-11-9.4 expressly limits the "equal" coverage mandate. Insurers must provide equal UIM coverage only up to a specifically stated limit: $100,000 for one person in one accident and $300,000 for two or more people in one accident. *Id.* After that, all "additional coverage" is optional. *Id.*[7] Thus, this Court has already rejected the majority's premise that SDCL 58-11-9.4 is an unlimited matching statute designed to provide the *full* recovery that the Kansas and Vermont courts found in their statutes. South Dakota has a statutory $100,000/$300,000 default maximum. We have previously concluded that the statute "reflects a legislative determination [i.e., a legislative policy] that the [$100,000/$300,000 maximum] set forth in the statute *is sufficient* to protect insured motorists from underinsured motorist[s]." *Gloe v. Union Ins. Co.*, 2005 S.D. 30, ¶ 12, 694 N.W.2d 252, 257 (emphasis added).[8]

---

7. Compare, e.g., Vermont's UIM statute, which requires *at least* $50,000 in UIM coverage and then *expressly* mandates equal coverage whenever the insured's liability limits *exceed* $50,000. *See* Vt. Stat. Ann. tit. 23, § 941(c) (West 2017).

8. The majority reverses course today. It concludes that SDCL 58-11-9.4 provides for "full compensation." *Supra* ¶ 14. But this change of opinion occurs only by conflating what coverage is *allowed* and what coverage is *mandated*. The majority reasons:

> The statute *allows* for UIM coverage to exceed $100,000 if "additional coverage is requested by the insured." Further, the statute *calls for* [presumably *mandates*] "coverage . . . at a face amount equal to the bodily injury limits of the policy." Therefore, the statute also contemplates the inclusion of additional coverage requested by the insured.

(continued . . . )

[¶29.]      The majority opinion is also incorrectly based on the belief that Streffs "paid" a premium for UIM coverage involving government-owned vehicles. *See supra* ¶¶ 15-16. They did not. The payment of a premium does not entitle an insured to unconditional coverage. *Nickerson v. American States Ins.*, 2000 S.D. 121, ¶ 15, 616 N.W.2d 468, 471. In the absence of a statutory mandate, coverage is governed by the policy terms, which includes exclusions. *See Ass Kickin Ranch, LLC v. N. Star Mut. Ins. Co.*, 2012 S.D. 73, ¶ 9, 822 N.W.2d 724, 727. Here, Streffs' umbrella policy was marketed and sold with an express term excluding coverage for government-owned vehicles. Although Streffs paid a premium and received *some* UIM coverage in their umbrella policy, that policy did not purport to provide *unconditional* coverage. Consequently, Streffs did not pay a premium for unconditional UIM coverage involving government-owned vehicles.

[¶30.]      Today the Court has mandated unconditional UIM coverage in all policies of insurance if that coverage is requested by the insured. Not one of the six legislative enactments relating to SDCL 58-11-9.4 since 1975 has said anything even close to that. On the contrary, the statutory text has always limited the mandate to motor vehicle liability policies; and those policies are included only if they are issued with respect to a motor vehicle that is registered or principally garaged in this state. I would apply these express legislative limitations and leave it to the Legislature to "extend" the statutory mandate.

[¶31.]      KERN, Justice, joins this dissent.

_____

(. . . continued)
     *Supra* ¶ 14 (emphasis added) (citations omitted).