#29051-a-SRJ
**2020 S.D. 12**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

| | |
|---|---|
| WESTERN AGRICULTURAL INSURANCE COMPANY, | Plaintiff and Appellee, |
| v. | |
| ALTAYEB ARBAB-AZZEIN, | Defendant, |
| and | |
| ALAALDEEN MUSSA, | Defendant and Appellant. |

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE DOUGLAS E. HOFFMAN
Judge

\* \* \* \*

| | |
|---|---|
| MARK D. O'LEARY Sioux Falls, South Dakota | Attorney for plaintiff and appellee. |
| WILLIAM J. WETERING of Hedeen, Hughes & Wetering Worthington, Minnesota | Attorneys for defendant and appellant. |

\* \* \* \*

CONSIDERED ON BRIEFS
JANUARY 13, 2020
OPINION FILED **03/11/20**

#29051

JENSEN, Justice

[¶1.]       On October 24, 2013, Altayeb Arbab-Azzein was driving multiple passengers in a van when it rolled over in a single-vehicle accident. One of the passengers, Alaaldeen Mussa, suffered serious injuries in the accident. Mussa brought an action against Arbab-Azzein for personal injuries. Arbab-Azzein had purchased a motor vehicle insurance policy through Western Agricultural Insurance Company (Western Ag). Western Ag denied coverage and refused to defend Arbab-Azzein, relying upon policy provisions excluding coverage for any vehicle being used to carry people for a fee. Thereafter, Western Ag filed this declaratory judgment action against Arbab-Azzein and Mussa to determine coverage. Following a bench trial, the circuit court determined Western Ag's policy exclusions were applicable and denied coverage for the accident. Mussa appeals. We affirm the circuit court's decision.

**Background**

[¶2.]       Mussa lived in Sioux Falls and worked at the JBS Swift plant in Worthington, Minnesota. Mussa did not own a vehicle and regularly rode with his co-worker, Arbab-Azzein, who owned a fifteen-passenger van. Arbab-Azzein drove Mussa and other co-workers from Sioux Falls to the Worthington Swift plant each day, a round-trip of approximately 125 miles.

[¶3.]       Arbab-Azzein purchased his van in 2012 for the purpose of driving himself and others to work at Swift. Before he bought the van, Arbab-Azzein rode to work in another co-worker's van under a similar arrangement. Arbab-Azzein was the sole driver of the van he purchased. Most of his passengers did not have

driver's licenses. Arbab-Azzein typically drove ten to fifteen passengers each day. He met them at a Hy-Vee grocery store in Sioux Falls, but occasionally Arbab-Azzein picked up some passengers at their homes. Each passenger paid Arbab-Azzein at least $40 per week regardless of the number of passengers commuting. Some passengers believed Arbab-Azzein was operating a business. However, Arbab-Azzein did not keep track of payments received, transportation expenses, or whether he made a profit. He did not claim any of the payments received from his co-workers as income on his tax returns. Arbab-Azzein believed the $40 weekly price per passenger covered the cost of gas, tires, oil changes, insurance, and vehicle maintenance, but he did not attempt to track or calculate these expenses.

[¶4.] The Western Ag automobile insurance policy purchased by Arbab-Azzein included medical payments and liability coverage. The policy contained a "vehicle used for a fee" exclusion applicable to each coverage. The exclusion for vehicle liability coverage provided: "**Vehicle Used for a Fee**. There is no coverage while any vehicle is being used to carry people for a fee. This exclusion does not apply to a shared-expenses car pool." The exclusion for medical payments coverage provided: "**Vehicle Used For a Fee or Rented to Others.** There is no coverage while any vehicle is being used to carry people or property for a fee or is rented to others."

[¶5.] The day before the accident that injured Mussa, Arbab-Azzein was in a minor accident with his van. Because Arbab-Azzein could not use his vehicle on October 24, he borrowed another fifteen-passenger van from a friend to transport

himself and at least fourteen others to work.[1] While returning from work, Arbab-Azzein lost control of the van, causing it to roll over. Mussa filed a lawsuit against Arbab-Azzein for his injuries.

[¶6.] After Western Ag denied coverage and refused to defend, Arbab-Azzein and Mussa entered into an agreement for a stipulated judgment against Arbab-Azzein in the amount of $1,500,000. The agreement provided that Mussa would not collect the judgment against Arbab-Azzein in exchange for Arbab-Azzein's assignment of his rights under the insurance policy.[2]

[¶7.] Western Ag brought this declaratory action against Mussa and Arbab-Azzein seeking a determination that there was no coverage for the accident under the "vehicle used for a fee" exclusions. Following a two-day bench trial, the circuit court entered findings of fact and conclusions of law and a judgment determining that Western Ag had no contractual obligation to defend Arbab-Azzein or provide indemnity for the accident. Mussa appeals, raising several arguments in support of his claim that the circuit court erred in determining there was no coverage under the "vehicle used for a fee" exclusions.

---

1. Western Ag has not challenged that the borrowed van was covered as a "temporary substitute vehicle" under the insurance policy.

2. This Court has approved *Miller-Shugart* settlements such as this one, which "permit[] an insured to settle a claim against it by admitting to a judgment and then assigning its rights under its insurance policy to its judgment creditor. The settlement, however, is not binding on the insurer unless the claim was actually covered and the amount of the settlement is reasonable and not the product of fraud or collusion." *W. Nat'l Mut. Ins. Co. v. TSP, Inc.*, 2017 S.D. 72, ¶ 7 n.1, 904 N.W.2d 52, 56 n.1 (citing *Miller v. Shugart*, 316 N.W.2d 729, 734-35 (Minn. 1982)). The validity of the settlement is not at issue in this appeal.

## Standard of Review

[¶8.]    "We review a declaratory judgment under SDCL 21-24-13 'as we would any other judgment or order.'" *N. Star Mut. Ins. Co. v. Peterson*, 2008 S.D. 36, ¶ 8, 749 N.W.2d 528, 531 (quoting *Gloe v. Union Ins. Co.*, 2005 S.D. 30, ¶ 7, 694 N.W.2d 252, 256). "Insurance contract interpretation . . . [is] a question of law, reviewable de novo, with no deference given to the [circuit] court's legal conclusions." *Auto-Owners Ins. Co. v. Hansen Hous., Inc.*, 2000 S.D. 13, ¶ 10, 604 N.W.2d 504, 509 (citing *Nat'l Farmers Union Prop. and Cas. Co. v. Universal Underwriters Ins. Co.*, 534 N.W.2d 63, 64 (S.D. 1995)).

[¶9.]    "We review the circuit court's findings of fact under the clearly erroneous standard." *Nelson v. Farmers Mut. Ins. Co. of Neb.*, 2004 S.D. 86, ¶ 5, 684 N.W.2d 74, 76 (citing *City of Deadwood v. Summit, Inc.*, 2000 S.D. 29, ¶ 9, 607 N.W.2d 22, 25). Findings of fact will not be disturbed unless the Court is "firmly and definitely convinced a mistake has been made." *In re Estate of Trautman*, 2006 S.D. 39, ¶ 9, 713 N.W.2d 600, 603 (quoting *Parks v. Cooper*, 2004 S.D. 27, ¶ 20, 676 N.W.2d 823, 839).

## Analysis and Decision

[¶10.]    "When an insurer invokes a contract exclusion to disallow coverage, 'the insurer has the burden of proving that the exclusion applies.'" *Auto-Owners Ins. Co.*, 2000 S.D. 13, ¶ 10, 604 N.W.2d at 509 (quoting *Am. Family Mut. Ins. Co. v. Purdy*, 483 N.W.2d 197, 199 (S.D. 1992)). However, "the insured bears the burden of proving that coverage exists through an exception" to the exclusion. *Demaray v. De Smet Farm Mut. Ins. Co.*, 2011 S.D. 39, ¶ 9, 801 N.W.2d 284, 287.

[¶11.]    "[The] insurance contract's language must be construed according to its plain and ordinary meaning and a court cannot make a forced construction or a new contract for the parties." *Ass Kickin Ranch, LLC v. N. Star Mut. Ins.*, 2012 S.D. 73, ¶ 10, 822 N.W.2d 724, 727 (quoting *Stene v. State Farm Mut. Auto. Ins. Co.*, 1998 S.D. 95, ¶ 14, 583 N.W.2d 399, 402). "[I]nsurance policies must be subject to a reasonable interpretation and not one that amounts to an absurdity." *Id.* (quoting *Prokop v. N. Star Mut. Ins. Co.*, 457 N.W.2d 862, 864 (S.D. 1990)). "If the terms of an insurance contract are susceptible to different interpretations" the policy provision is ambiguous, and the Court will "adopt the interpretation most favorable to the insured." *Auto-Owners Ins. Co.*, 2000 S.D. 13, ¶ 10, 604 N.W.2d at 509 (citing *Chord v. Reynolds*, 1999 S.D. 1, ¶ 14, 587 N.W.2d 729, 732); *accord N. Star Mut. Ins. Co.*, 2008 S.D. 36, ¶ 10, 749 N.W.2d at 531. However, the "fact that the parties differ as to the contract's interpretation does not create an ambiguity." *Ass Kickin Ranch, LLC*, 2012 S.D. 73, ¶ 9, 822 N.W.2d at 727 (quoting *Zochert v. Nat'l Farmers Union Prop. & Cas. Co.*, 1998 S.D. 34, ¶ 5, 576 N.W.2d 531, 532). Moreover, "mere absence of a definition does not alone create ambiguity." *N. Star Mut. Ins. Co.*, 2008 S.D. 36, ¶ 9, 749 N.W.2d at 531.

[¶12.]    Mussa initially argues that Western Ag failed to meet its burden to show the "vehicle used for a fee" exclusions precluded coverage in this case. This first argument can be easily disposed of as there is ample evidence that Arbab-Azzein was charging a weekly flat fee of $40, and in some instances $45, to transport each passenger. The number of passengers would at times vary, but the rate charged by Arbab-Azzein did not change based upon the number of passengers

riding in the van. The evidence supports the circuit court's finding that "it is crystal clear from the evidence that Arbab-Azzein was charging a flat fee to transport his co-workers to the Swift facility daily."

[¶13.] Western Ag met its burden to prove the "vehicle used for a fee" exclusions were applicable for both medical payments and liability coverage. *See Auto-Owners Ins. Co.*, 2000 S.D. 13, ¶ 10, 604 N.W.2d at 509. Because the medical payments exclusion precludes coverage without exception, the circuit court correctly concluded that the policy did not provide coverage for medical expenses arising from the accident. In contrast, the liability coverage exclusion provides an exception for a "shared-expenses car pool." We then consider whether this exception applies to provide liability coverage.

[¶14.] The policy does not define "shared-expenses car pool." As such, Mussa claims the phrase is ambiguous because it is susceptible to differing interpretations and should have been interpreted most favorably to the insured. *See Ass Kickin Ranch, LLC*, 2012 S.D. 73, ¶ 9, 822 N.W.2d at 727. He also argues that the circuit court erred in reading the phrase "shared-expenses car pool" too narrowly. The circuit court relied on *Meridian Mut. Ins. Co. v. Auto-Owners Ins. Co.* (*Meridian I*), 659 N.E.2d 207 (Ind. Ct. App. 1995), *vacated by Meridian Mut. Ins. Co. v. Auto-Owners Ins. Co.* (*Meridian II*), 698 N.E.2d 770 (Ind. 1998), which limited the term "car pool" solely to arrangements where participants take turns driving and the expenses are proportionally shared between all the participants.[3] Mussa asserts

---

3. In *Meridian I*, the Indiana Court of Appeals adopted a definition that a "typical 'car pool' is an arrangement whereby drivers and vehicles are rotated

(continued . . .)

that because of the ambiguity, the court must adopt the reasonable interpretation of the insured, which includes the car pool arrangement in this instance where there was one driver, but the participants shared the transportation expenses. Western Ag responds that there is no ambiguity in the phrase "shared-expenses car pool," and the circuit court properly declined to apply the exception to the policy exclusion given the facts of the case.[4]

[¶15.]	We have not previously considered whether the language "shared-expenses car pool" is ambiguous. A few courts have found similar language to be ambiguous.[5] However, most courts have held such language to be unambiguous. *Avemco Ins. Co. v. Auburn Flying Serv., Inc.*, 242 F.3d 819, 823 (8th Cir. 2001)

---

(. . . continued)

without an exchange of money." 659 N.E.2d at 212. On review, the Indiana Supreme Court vacated the decision of the court of appeals and declined to adopt such a narrow definition. *Meridian II*, 698 N.E.2d 770 (Ind. 1998). The Indiana Supreme Court held the definition used by the appellate court "fail[ed] to encompass car pool arrangements in which the participants share costs by way of monetary contribution to a principal driver, rather than by each taking turns employing his or her own vehicle." *Id.* at 775 n.4.

4.	Western Ag asserts that Mussa failed to argue that the phrase was ambiguous below, and so this argument should not be considered on appeal. *See Sharp v. Sharp*, 422 N.W.2d 443, 445 (S.D. 1988). Western Ag acknowledges that Mussa raised the issue in a post-trial brief to the circuit court, but did not present any evidence of ambiguity at trial. A review of the record shows that Mussa argued ambiguity to the circuit court and the legal issue was presented below.

5.	*See, e.g., Gen. Accident Ins. Co. v. Gonzales*, 86 F.3d 673, 679 (7th Cir. 1996) (concluding a "share-the-expense car pool" is ambiguous and not limited to a narrow definition); *Aetna Cas. & Sur. Co. v. Mevorah*, 149 Misc. 2d 1011, 1015 (N.Y. Sup. Ct. 1991) (finding the "share-the-expense" car pool language to be ambiguous and to encompass many varieties of less formal car pool arrangements).

(concluding a "for charge" exclusion in an aircraft insurance policy was not ambiguous when read with the language "equal sharing among occupants of the operating costs of a flight"); *Meridian II*, 698 N.E.2d at 773 (holding the ordinary meaning of "shared-expense car pool" is clear and not ambiguous); *Pugh v. Zefi*, 812 N.W.2d 789, 792 (Mich. Ct. App. 2011) (holding the language "car pools" or "shared-expense car pools" should be read using the ordinary or commonly used meaning of the terms); *Meridian I*, 659 N.E.2d at 211 (finding the exclusion is unambiguous and should be given its plain and ordinary meaning).

[¶16.]     We conclude there is no ambiguity in the language of the exception for "shared-expenses car pool."  Merriam Webster defines a "car pool" as "an arrangement in which a group of people commute together by car."  Merriam Webster's Collegiate Dictionary 189 (11th ed. 2003).  American Heritage defines "car pool" as "[a]n arrangement whereby several participants . . . travel together in one vehicle, the participants sharing the costs and often taking turns as the driver."  American Heritage Dictionary 242 (1985).  The language "shared-expenses" when read with "car pool" plainly encompasses a variety of car pool arrangements where the participants share in the transportation costs either by taking turns driving a vehicle or by making some other monetary or economic contribution toward the expenses.

[¶17.]     The circuit court read the language "shared-expenses car pool" too narrowly by limiting the exception to arrangements where the participants take turns driving.  The insurance contract language "must be construed according to its plain and ordinary meaning" and the terms "cannot be enlarged or diminished by

judicial construction." *Ass Kickin Ranch, LLC*, 2012 S.D. 73, ¶ 10, 822 N.W.2d at 727. The language "shared-expenses car pool" is broad enough to encompass more than a traditional car pool where drivers take turns driving their own vehicles. An arrangement where passengers share the expenses of the "car pool" is well within the language of the exception, even if only one vehicle is used exclusively for transportation.

[¶18.] The determination that the circuit court's reading the "shared-expenses car pool" exception too narrowly does not, however, resolve the question whether the "shared-expenses car pool" exception was applicable to the facts of this case. The court concluded from its findings that the participants were not involved in a shared-expenses arrangement under the exception to the policy exclusion. We agree.

[¶19.] The circuit court found that Arbab-Azzein was charging a flat fee of at least $40 per passenger each week, regardless of passenger fluctuation. In the court's view, this fee arrangement involved a profit-making venture by Arbab-Azzein rather than a sharing of expenses. Further, the court found the evidence to be insufficient to "persuade the court to find the occupants were sharing expenses."

[¶20.] Mussa challenges the circuit court's findings, but he has failed to show how these findings are clearly erroneous. After Western Ag presented evidence that the van was being used to carry people for a fee under the exclusion for coverage, Mussa had the burden of proving coverage existed through the "shared-expenses car pool" exception. *See Demaray,* 2011 S.D. 39, ¶ 9, 801 N.W.2d at 287. While Arbab-Azzein testified that he applied the fees he received from the passengers to the

expenses of travel to and from the Swift plant, he did not provide an approximation of these expenses. Mussa also failed to present any evidence of actual, or estimated, transportation costs for Arbab-Azzein to drive his van between Sioux Falls and Worthington each day.

[¶21.] Based upon their dealings with Arbab-Azzein, some of his co-workers believed that he was running a business in transporting them to and from work each day. Arbab-Azzein was receiving approximately $565 per week to transport his co-workers to Worthington. The circuit court could have inferred from this evidence that Arbab-Azzein's weekly receipts exceeded his expenses to drive approximately 630 miles each week. Additionally, Western Ag presented evidence of the IRS mileage reimbursement rates at the time of the accident. Applying the IRS reimbursement rates showed that the fees charged by Arbab-Azzein exceeded his expenses by over $210 weekly.

[¶22.] Mussa argues that the circuit court's consideration of the IRS mileage rate was improper. However, Mussa did not object to this evidence at trial or otherwise attempt to show that the IRS rate was an inappropriate measure of Arbab-Azzein's actual expenses. Mussa has failed to demonstrate that the circuit court erred in relying on this evidence to find that Arbab-Azzein was making a sizable profit from the fees charged to co-workers.

[¶23.] Mussa cites *Meridian II* to support his further claim that the lack of evidence showing the actual expenses is not fatal to his claim that this was an informal shared-expenses arrangement. The *Meridian II* court stated that a comparison of the fees received to the expenses incurred is but one factor to consider

under a similar shared-expense car pool exception. 698 N.E.2d at 774. *Meridian II* also noted the difficulty in determining actual expenses in carpooling arrangements because they are "predominantly informal arrangements typically based on 'ball-park' figures and 'reasonable guesses' about the expenses incurred in the daily trip." *Id.* In determining whether the arrangement was a shared-expense car pool, the *Meridian II* court viewed the arrangement from the perspective of a reasonable person in considering "the correlation of expenses to the amount contributed by each passenger [as] one item to consider in reviewing this issue, [along with] many other questions a reasonable person might ask in determining whether a commuting arrangement is a shared-expense car pool." *Id.* at 776.

[¶24.]     The *Meridian II* court set forth those questions as follows:

> "What appears to be the driver's primary motivation to participation (i.e. is the driver doing this to make money)?" [To] help answer this question [examine]: whether the driver merely has an operator's license, or a more specialized form of driver's license; whether the driver declares the money she receives from her passengers as income or lists her expenses as business deductions on her tax returns; whether the vehicle is owned by the driver or by a commercial entity; whether the driver holds herself out as providing transportation to the general public or a large group of people, or only to a small group that generally does not vary in participation; whether there is significant formality in the relationship between the driver and passengers, such as a written agreement; whether the driver has a purpose besides the travel itself for going from the point of departure to the point of arrival; and whether the driver uses the vehicle at other times for her own personal use.

*Id.*

[¶25.]     After determining that the fees paid to the driver roughly approximated the expenses the driver incurred, the *Meridian II* court considered these other questions bearing on whether the arrangement was a shared-expense

car pool.  In such circumstances, these additional questions were helpful in considering whether the arrangement was a shared-expense car pool.

[¶26.]      Here, in contrast, it is unnecessary to consider the additional questions posed by *Meridian II* because the evidence and circuit court's findings objectively show that Arbab-Azzein was earning a sizable profit from the flat fees paid by his riders, rather than sharing expenses.  The circuit court's findings that Arbab-Azzein was engaged in a profit-making venture, and that there was no correlation between his expenses and the fees paid by each passenger, support the determination that this was not a "shared-expenses car pool" arrangement.  Therefore, the court did not err in concluding that the insurance policy did not provide coverage for Mussa's injuries.

[¶27.]      We affirm.

[¶28.]      GILBERTSON, Chief Justice, and KERN, SALTER, and DEVANEY, Justices, concur.